THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant, *v.* TABITHA Cox, Administratrix of Othneile Cox, deceased, Appellee.

APPEAL FROM UNION.

Where competent servants have been selected to perform a duty, one of them cannot recover against the master for the carelessness of a fellow-servant.

It will be understood that each servant who engages in a particular business, calculates the hazards incident to it, and contracts accordingly.

Where A. contracts to deliver wood to a railroad company, the company to furnish the equipment to move it, the men on the train to obey the orders of the contractor, one of the servants employed by him to load wood upon the car having been thrown off and killed: Held, that the parties were all servants of the company, and that no recovery could be had by the administratrix for his death.

THIS action was instituted by the appellee against the appellant, in the Union Circuit Court.

The declaration was in case, and contained five counts, setting forth that the appellant, being the owner of the Illinois Central Railroad, and the locomotives, engines and cars running thereon, did, by and through its servants and employees, so carelessly misdirect and mismanage a locomotive and cars, running on said railroad, as to carelessly, negligently and unskillfully cause a collision, whereby one Othneile Cox, who was employed as a servant on said cars by defendant, was killed; to the damage of the plaintiff of $5,000.

To said declaration the defendant pleaded *not guilty,* and a further plea, which is set out in the opinion.

Upon these pleas issue was taken ; and the cause was tried at May term, A. D. 1857, of the Union Circuit Court, before PARRISH, judge, and a jury.

Upon said trial, the plaintiff introduced *Green Bridges,* who testified that he was present when Othneile Cox was killed, which was on the 9th day of February, 1855. He was killed by a train of cars running on the Illinois Central Railroad, which were, at the time, engaged in hauling wood. The circumstances under which Cox lost his life were about these : In the morning before he was killed, we all got on the train, and went down the road from Anna after a load of wood. When the cars were loaded, they were started. Cox and myself were standing together on the cars, for a time, after which I moved my position to another place on the cars, in front, rather, of where Cox was standing. Cox was standing up against the wood with his face turned towards the rear of the train. The train was running rather fast, and just as we came to a train on the side track, I turned my head and saw the wood on the cars tumbling off. The wood struck the cars on the side track, which shoved it back against Cox's leg, and tripped him up and threw him off the cars. The moment I saw him fall, I hallooed as loud as I could to have them stop the train, but the train still went on. I saw a young man standing in front of me on the train ; I then motioned my hand to him. The young man immediately pushed open the door of the caboose car, and the conductor came running out of the caboose car, and asked what was the matter. I informed him, and he wheeled right round and ran back and whistled, and the train was stopped ; we ran back to where Cox was thrown off, and there lay Cox, dead. He was covered with mud, as if he had been rolled over in the mud for some little distance ; one of his feet was nearly cut off ; his thigh was broken so that the bones stuck out ; there were cuts over each eye, and a large gash on the back of his head, so that we could see his skull bone. Cox never moved after I went back. I was well acquainted with him. Witness stated that Cox left children and also a widow, the plaintiff in this suit. The locomotive and cars upon which Cox was at the time he was killed, were called the Illinois Central Railroad Company's. The engineer's name was Travis ; the conductor's, Wight. The wood hauled was used along the line of said railroad. The wood that knocked Cox off, was knocked off the train by running against another train. It looks as if the conductor and engineer might have seen the car standing upon the side track if they had looked out. Our speed was not slacked up as we came to the switch. Do not know Travis's character as an engineer ; if he was drunk, I do not know it ; did not see

him drink; do not know that he was in the habit of drinking. The wood was not over the edge of our cars. \

Cross-examined. Bennett was a contractor on the road to furnish wood. Bennett and Scott had the locomotive and cars under their control for that purpose. They sent the train where they pleased. I thought that Cox was employed by Bennett; that we were all employed by him. Can give no opinion as to competency of conductor or engineer. Had known Cox five or six years; he was industrious, but sometimes drank too much liquor.

Bennett was hauling wood for the company; taking it to stations along the road for the company.

*Philip Cruse* testified that he had known Cox eight or ten months. Cox's family were dependent upon his labor for a living. Witness drank with Travis between seven and nine o'clock on the morning of the day that Cox was killed—thought that he was a little tight.

The defendant introduced *Wm. W. Bennett*, who testified as follows: At the time that Cox was killed, I was a contractor on the road. My business was to furnish wood to the company, and build fence. Mr. Scott, my partner, and myself, had charge of the train off of which I suppose Cox was thrown and killed. We had charge of the train, and the men on the same had to obey our orders. Mr. Cox was in our employ at the time. We sent the train out that morning. I had known Travis at least eight months before Cox was killed. He was regarded as one of the best engineers on the road; that was his character. He was skillful, careful and competent. I regarded him as a very superior man in that business. I had known Wight for three months. He had been very successful, and bore a good reputation as a conductor. Cox was generally a sober man, but would sometimes get drunk. My contract with the company, as to furnishing wood, was this: It was to be furnished at a certain price, and the company were to furnish a train of cars, locomotive, engineer, conductor and fireman, and the balance of the hands necessary. Mr. Scott and myself were to furnish ourselves. They did furnish us a conductor, engineer and fireman. Cox was in our employ at the time of his death. It was only a few days at a time that the train was furnished us, when we would call in all the hands needed.

Bennett and Scott were always held responsible for the management of the train, by the superintendent, and the officers that the company furnished us were subject to our direction and control. We could stop them at any time.

The jury found the defendant guilty, and assessed the damages at one thousand dollars. A motion for a new trial was

overruled.   The court rendered judgment in favor of plaintiff, for the sum of one thousand dollars and costs of suit.   The defendant appealed to this court, and now assigns the following causes of error :

That the verdict was against the law and the evidence.

That the verdict was against the instructions of the court.

That the court erred in refusing to grant a new trial, and in rendering judgment.

J. M. DOUGLAS and ISHAM N. HAYNIE, for Plaintiff in Error.

R. S. NELSON, for Defendant in Error.

BREESE, J.   This action is brought under the first section of the act entitled, "An act requiring compensation for causing death by wrongful act, neglect or default," approved Feb. 12, 1853.   Scates' Comp. 422.

That section is in these words:  "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

This action is brought by the widow of Othneile Cox, alleged to have been killed by the negligence of the defendants, in running their train.   The declaration contains five counts, to each of which a separate demurrer was interposed, which was sustained by the court, and the plaintiff took leave to amend each count.   To this amended declaration, and to each count thereof, the defendants again interposed a demurrer, which was sustained to all the counts except the first — to that it was overruled.

The first count is as follows, omitting the formal parts: "For that whereas heretofore, on the ninth day of February, in the year of our Lord one thousand eight hundred and fifty-five, and in the lifetime of the said Othneile Cox, who is deceased, at the county of Union and State of Illinois, the said defendants being then and there the owner of, and in the possession of the Illinois Central Railroad and the locomotives and cars thereon, did then and there by their agents, employees and hands, and by their negligence, carelessness and unskillfulness, and wrongful act of the same, kill, by running their said cars and locomotive on,

against, and over the body of the said Othneile Cox, the intestate and husband of the said plaintiff, thereby, then and there by the said wrongful act, negligence, carelessness and unskillfulness of the said defendant, causing the death of the said Othneile Cox, contrary to the form of the statute in such case made and provided, and to the damage of the said plaintiff as such administratrix, of five thousand dollars;" concluding with profert of the letters of administration.

To this count the defendants pleaded four pleas, not guilty and three special pleas. To the second, third and fourth, the plaintiff demurred, and the court sustained the demurrer as to the second and fourth, leaving the first and third pleas, on which issues of fact were made up.

The third plea is as follows : And for a further plea in this behalf, the said defendants say, *actio non,* because they say that the said locomotive, steam engine and cars, in the plaintiff's declaration mentioned, were driven upon, and against, and came in collision with the said cars, locomotives, steam engines upon which the said Othneile Cox then was, in manner and form as in the said declaration is alleged, solely by and through the carelessness, negligence, unskillfulness and default of the said servants of the defendants in the declaration mentioned in that behalf, and for want of due care and attention by them, and not through any other negligence, unskillfulness, default or want of due care and attention, and the said engines and cars in the declaration in that behalf mentioned, were respectively under the guidance, government and direction of the said several servants of the said defendants in the declaration mentioned, and of no other person or persons, and that the said Cox at the said time when, etc., was also a servant and in the employment of the said defendants in said declaration in this behalf mentioned, upon their said railroad ; and that the said carelessness, negligence, unskillfulness and default, and want of due care and attention of the said servants of the said defendants in the declaration in that behalf mentioned, at the said time when, etc., and were wholly unauthorized by the said defendants, and were entirely without the leave or license, knowledge, sanction or consent of the said defendants ; and concluding with a verification.

There is no formal replication to this plea. It is traversed in brief, by the words : " Traverse and issue to the country." To give this the force and effect of a formal replication, it will be seen that it traverses the fact that the locomotive and cars were under the guidance and direction of the defendants' servants ; that the deceased was one of those servants ; that the defendants did not authorize such carelessness, negligence and unskill-

fulness. This must either be considered as a general traverse, or regarded as a nullity, and a repleader awarded, but the parties have treated it as a general traverse, and it will be so considered.

Under the plea of not guilty, it is incumbent on the plaintiff to make out his case, substantially as stated in his declaration. He was required to show that the defendants were in the possession and owners of the railroad, and locomotives and cars thereon, and that by their agents, employees and hands, and by their negligence, carelessness and unskillfulness, and wrongful act, by running their said cars and locomotive on, against, and over the body of said Cox, they thereby caused the death of Cox; and the pleadings bring up the question whether the deceased, being the servant of the defendants, and they the common master of many servants, all engaged at the same time in the same business, are answerable " for the wrongful act, neglect or default" of one of the servants, by which another servant is injured.

The declaration does not state in what capacity the deceased was on the train—whether as a passenger, or as one of the servants or hands, but the special plea affirming that he was one of the servants, and which fact is put in issue by the general traverse, is established by the proof. We shall consider, for the purposes of this case, that all the parties, as well Bennett and Scott as their hired hands, were, all of them, employees of the company, and the jury have found the death was caused " by their wrongful act, neglect or default." We consider it as proved that all the persons engaged on the train were employed by the company in the same service, and the jury were told by the court,

1st. That a railroad company, or other corporation, are not responsible for injuries to their servants or agents, occasioned by the carelessness, negligence or unskillfulness of fellow-servants, while acting in the same service, without their knowledge or sanction, provided such company or corporation have taken proper care to engage competent servants to perform the duty assigned them; or if the person injured was acquainted with the character of his fellow-servants for capacity or skillfulness, while engaged as such servant.

2nd. That, in this case, if Othneile Cox was, at the time of his injury, in the employment of the Illinois Central Railroad Company, (provided the jury are satisfied, from the evidence, that he was in their employment,) and in the discharge of his duty as such; and, further, if they believe, from the evidence, that the injury complained of was occasioned either by his own carelessness, unskillfulness or negligence, or that of his fellow

servants in the same line of service, they should find for the defendants, provided they have exercised proper care in the selection of competent servants.

3rd. That when Othneile Cox entered into the service of the railroad company, (if the jury should believe, from the evidence, that he was in their service at all,) he thereby virtually undertook to run all the ordinary risks incident to his employment, including his own negligence or unskillfulness, or the negligence or unskillfulness of his fellow-servants in the same employment, or necessarily connected therewith.

4th. That it is presumed in law that his wages were commensurate with the hazard to which he was exposed.

5th. The true principle is, that when the servant of a company engages in their service, he undertakes, as between himself and his employer, to run all the ordinary risks of the service which he undertakes; and this includes the risk of occasional negligence- or unskillfulness on the part of his fellow-servants or employees engaged in the same line of duty, or incident thereto; provided such fellow-servants are competent and skillful to discharge the duty assigned them.

These instructions declare the law correctly, as we have already decided in the case of *Honner* v. *Illinois Central Railroad Company*, 15 Ill. R. 550, and are in harmony with the great majority of English and American decisions.

See on the point, *Hutchinson, Adm'x*, v. *The York, New Castle and Berwick Railway Co.*, 5 Exch. Rep. 341; *Wigmore, Adm'x*, v. *Jay*, ib. 353; *Skip* v. *The Eastern Counties Railway Co.*, 24 Eng. L. and E. 396; *Wiggett* v. *Fox*, 36 ib. 486; *Degg, Adm'x*, v. *The Midland Railway Co.*, 40 ib. 377; *Farwell* v. *Boston and Worcester Railroad Co.*, 4 Metcalf, 49; *Murray* v. *S. Carolina Railroad Co.*, 1 McMullen R. 385; *Brown* v. *Maxwell*, 6 Hill R. 592; 6 Barbour R. 231; 3 Cushing R. 270; *Ryan* v. *Cumberland Valley Railroad Co.*, 23 Penn. R. 384; 6 Louisiana Annual Rep. 495; *Shields* v. *George*, 15 Georgia R. 349; *Madison and Indianapolis Railroad Co.* v. *Bacon*, 6 Ind. R. (Porter) 205.

We think the doctrine established by these cases the correct doctrine. It is right and proper that one servant should not recover against the common master for the carelessness of his fellow-servant, provided competent servants have been selected by the master. It is important to all concerned that each servant should have an interest in seeing that all his co-servants do their duty with proper care and fidelity, and who will take care to report the negligent and unskillful by whom their lives may be endangered, to their principal. This will make them all prompt and vigilant, and their master's interest be closely inter-

woven with their own, and all properly regarded. Independent of this, it must be understood that each servant, when he engages in a particular service, calculates the hazards incident to it, and contracts accordingly. This we see every day—dangerous service generally receiving higher compensation than a service unattended with danger or any considerable risk of life or limb.

The jury in this case were fully informed of these principles by the clear and unqualified instructions of the court, and no duty remained to them but to obey them. They were constrained to believe from the evidence, there being no conflict, that the employees of the company were skillful and competent for the business in which they were employed. There was no "wrongful act, neglect or default" proved, of such a character as to have entitled the deceased, had he survived the injury, to maintain an action. The proof abundantly shows that the engine driver and conductor, who are the principal persons engaged about the train, were skillful and competent men, and that the usual and ordinary caution was observed by them. There can be little doubt, from the evidence, that the accident was occasioned by the unskillful manner in which the wood was loaded upon the cars—in doing which the deceased was an actor—the ends of the sticks extending over the side so far as to strike the train on the switch. By striking this train, the pile of wood near which the deceased was standing, was displaced, and he precipitated upon the track. This, surely, was but an ordinary accident—a casualty to which the employment he was engaged in, exposed him, and he must be understood to have made his contract with reference not to it especially, but to all accidents of such character. Whether he participated or not, in the act of piling the wood, is immaterial. All the hands hired by Bennett and Scott, who were contractors to furnish the wood, and who had control of the engine and train, were engaged in the same business, and the deceased took upon himself, in consideration of the compensation paid him, the ordinary risks of the business, including the negligence of his fellow-servants. If this were not so, no great enterprises could be safely undertaken and carried on, nor would there exist that vigilance and care on the part of the employed, which is so vital to their success.

The court, after instructing the jury as it did, should not have hesitated to set aside the verdict, as the verdict was directly in the face of the instructions, and no evidence justifying it.

We have said, and such is the rule every where, that a court will not set aside a verdict where the jury have found contrary to the instructions of the court, if upon the whole case it appears that substantial justice has been done. In a case like

this, however, where an important principle was involved, and one of no common magnitude, and in- expounding which, the court was clear and distinct, and no sufficient evidence to charge the defendants, a court would fall far short of its duty, should it permit its instructions to be totally disregarded by the jury, as they appear to have been in this case. .

The judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*