## Clara Dressel and Thomas F. Hunt, Administrators, Appellees, v. Chicago City Railway Company, Appellant.

### Gen. No. 16,934.

1. MASTER AND SERVANT—*instructions*. It would seem that it is reversible error to give instructions which direct a verdict and ignore the defense of assumed risk when the relation of master and servant is shown to exist, unless, as a matter of law, the facts do not show that the servant assumed the risk.

2. MASTER AND SERVANT—*when fellow-servant cannot recover*. If a motorman and an electrical laborer repairing a trolley wire are fellow-servants, such laborer cannot recover against the common master for injuries caused by the negligence of the motorman in running his car at a high speed when the tracks were "greasy" and in failing to keep a proper lookout.

3. MASTER AND SERVANT—*negligence*. If a motorman and an electrical laborer are not fellow-servants such laborer can recover against the master for the negligence of the motorman in approaching an unlighted viaduct at a high rate of speed without keeping a proper lookout.

4. MASTER AND SERVANT—*fellow-servants*. Whether a motorman and an electrical laborer engaged in repairing trolley wires are fellow-servants is a·question of fact for the jury.

5. MASTER AND SERVANT—*instructions*. Where the question whether an electrical laborer injured by the alleged negligence of a motorman and such motorman are fellow-servants is not negatived by the declaration, instructions that if the jury find from the evidence that defendant was guilty of negligence as alleged in the declaration, and that such negligence caused the injury, and that the one injured exercised ordinary care, the verdict should be for the plaintiff should not be given.

6. MASTER .AND SERVANT—*instructions*. In an action against a street railway company for the death of an electrical worker caused by the alleged negligence of a motorman, it is not error to refuse an instruction to the effect that if the jury find from the evidence that there was a safe way for such laborer to repair the wire in question and an unsafe way, and that deceased chose the unsafe method, then no recovery can be had, since it assumes that the way selected .was unsafe and does not specify that the method chosen must have contributed to the injury.

7. STREET RAILROADS—*duty to those using street*. A street railway company owes to all persons using a public street with due care the duty to exercise reasonable care in operating its cars and

that fact that one so using a street is a servant of the company does not release it from its duty.

8. MASTER AND SERVANT—*pleading.* In an action against a street railway company for death caused by the alleged negligence of a motorman where the declaration proceeds on the theory that the company was under a duty to deceased as a member of the community and does not state that the relation of master and servant existed, it states a good cause of action and if the evidence shows the existence of the relation, this may be a defense or it may not, according to circumstances.

9. STREET RAILROADS—*pleading.* A declaration states a good cause of action against a street railway company where it alleges a duty upon the company, by its servants in charge of a car, to keep a proper lookout and to operate the car in a safe manner to prevent it from colliding with a wrecking wagon on which deceased was working in the exercise of due care, which duty the company failed to perform and allowed the car to collide with the wagon, thereby killing the deceased.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed October 3, 1912. Rehearing denied October 17, 1912.

JOHN E. KEHOE, C. LEROY BROWN, for appellant.

EDWARD MAHER, for appellee; GUERIN, GALLAGHER & BARRETT, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from a judgment for $7,350, recovered by appellees as damages for negligently causing the death of John Dressel, deceased. The declaration contains two counts. The first count alleges that defendant (appellant here), on October 22, 1904, operated a street railroad on Archer avenue, a public highway in Chicago, and used thereon an electric street car, which was under the management of defendant's servants, who were driving the same on said highway towards a subway near the intersection of Archer avenue and Twenty-third street; that it was the duty of the defendant, by its servants in charge of

the car, "to keep a proper look-out, and to run and operate its said electric car in a safe manner, so as to prevent it, the said electric car of the defendant, from running against and colliding with a certain wrecking wagon, upon which the deceased, John Dressel, was then and there standing, working at the fixing and repairing of an electric wire which was strung under the subway aforesaid, at or near the place aforesaid, and while he, the said John Dressel, was then and there in the exercise of due care and caution for his own safety in that behalf;" that defendant, in disregard of its duty, did not keep a proper look-out and did not operate its car with care so as to prevent it from colliding with the wrecking wagon, but carelessly and negligently failed to do so, and the car collided with the wrecking wagon upon which Dressel was working "in his employment as an electrical laborer, and while he was exercising due care and caution for his own safety;" by means whereof, Dressel was thrown from the wagon to the ground and killed. The second count, after alleging the same facts concerning the operation of the street car upon the public highway at the subway mentioned, avers that it then and there became the duty of the defendant, by its servants, "to run and operate its said electric car at a reasonable rate of speed, so as not to collide and run into a certain wrecking wagon, which was then and there upon the tracks of the defendant, and upon which the deceased, John Dressel, was then and there employed as an electrician and electric repairer, to undertake certain repairs on a wire which was strung under the subway aforesaid;" that the defendant disregarded said duty, and negligently ran its car at a high and dangerous rate of speed, and ran into and collided with the wrecking wagon upon which Dressel was working with due care; by means whereof, Dressel was thrown to the ground and killed. To these counts, the defendant filed a plea of the general issue.

Dressel et al. v. Chicago City Ry. Co., 172 Ill. App. 568.

Upon the trial before a jury in the Circuit Court, it appeared from the evidence that Dressel was an employe of the defendant company: that he had charge of the wrecking wagon mentioned in the declaration; that he was working at the time with two other employes named McCauley and Spotten. The wrecking wagon, or "repair wagon," as it is sometimes called in the evidence, consisted of a wagon about twelve feet long, carrying what is called a "tower," a skeleton framework structure rising six and one-half feet above the body of the wagon, upon which the men stood while repairing trolley wires. Attached to each of the front corners of the wagon was a common barn lantern. At about 11:30 P. M. on October 22, 1904, the three men were repairing a broken wire underneath a bridge or viaduct over a subway on Archer avenue, between Wallace and Butler streets. Archer avenue runs northeast and southwest. The first street west of the subway is Wallace street, the second Emerald avenue, and the third Halsted street. The street car tracks curve to the south in passing through the subway from the west. The repair wagon was standing in the east bound or southerly track, under the subway. The horses were facing northeast, and the rear end of the wagon projected several feet beyond the westerly end or side of the subway bridge. There were no street lamps in the subway, the nearest street lamp being an electric light 200 feet away. Spotten was standing on the ground holding the horses' heads. McCauley and Dressel were on top of the tower, working at the broken wire. Dressel had with him there one of the lanterns which he had taken from the front of the wagon. The other lantern remained in its place at one of the front corners of the wagon. An electric car, forty-eight feet long, came from Halsted street into Archer avenue on the southerly track. When it reached Emerald avenue, Spotten saw it and called out to Dressel that a "car was coming pretty fast."

Dressel told Spotten to go and flag it or stop it, but did not get down from the tower. Spotten tried to unfasten the lantern from the front of the ·wagon, found he would not have time to do so, and then ran southwesterly on the track, waving his hat in his hand and thus endeavoring to stop the coming car. Mc-Cauley descended from the tower to the wagon seat, and Dressel then waved his lantern across the track from his position on top of the tower. Spotten, running towards the car, reached a point about 150 feet west of the subway before the car passed him. He was unable to attract the attention of the motorman, who testified that he did not see Spotten, nor did he see either of the lights on the wagon. The motorman also testified that when he reached a point about 150 feet from the subway, he noticed a dark object under the subway, and at once shut off the power, applied his brakes, and with his foot opened the sand spout; that the track was a "greasy" track, by which he meant a track that was partly wet and partly dry, causing the car wheels to slip and slide along the track. The car hit the wrecking wagon, capsized it, and Dressel was thrown to the ground and killed.

As we have reached the conclusion that the case must be reversed and remanded, we refrain from discussing the evidence further than is necessary to show the reasons for our conclusion. It is contended that there were errors in the admission of evidence, and that the deceased was guilty of contributory negligence. As to these contentions it will suffice to say, that upon a consideration of all the facts shown in this record, we cannot say, as a matter of law, that the deceased was guilty of contributory negligence, and we do not think that the alleged errors in the admission of evidence, if conceded to be errors, were of such a character as to reverse the case, if standing alone.

The trial court gave to the jury, at the request of the plaintiff, three instructions, the gist of each of

which is that if the jury find from the evidence that the defendant was guilty of negligence as alleged in the declaration, that such negligence caused the injury to the deceased, and that before and at the time of such injury the deceased was in the exercise of ordinary care for his personal safety, then the verdict should be for the plaintiff. These instructions direct a verdict and ignore the defense of assumed risk. It has been held in several recent cases, that it is reversible error to give such instructions when the relation of master and servant is shown to exist, unless it can be said, as a matter of law, that the facts do not show that the servant assumed the risk. Krieger v. A. E. & C. R. R. Co., 242 Ill. 544; Cromer v. Borders Coal Co., 246 Ill. 451; Cantwell v. Harding, 249 Ill. 354. If it were not for the uncontradicted fact that the negligent act, if any, which proximately caused the injury, was the act of the motorman in approaching a subway in the darkness at full speed, fourteen or fifteen miles an hour, when he knew, as he himself testified, that the tracks were "greasy" and that under such conditions he could not possibly stop his car in less than 150 feet, we would have no difficulty in finding that the remaining facts and circumstances shown do not make out a case of assumed risk. But it is frequently stated, in the authorities upon this subject, that a servant assumes the risk of the negligence of a fellow servant within the legal meaning of that term, as one of the "ordinary risks" of his employment. C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302, 321; I. C. R. R. Co. v. Cox, 21 Ill. 20; Fitzgerald v. Honkomp, 44 Ill. App. 365; 26 Cyc. 1279. Whether this statement be technically accurate or not, it is firmly established in this state, that a master cannot be held liable for damages for an injury, the proximate and sole cause of which is the negligence of a fellow servant, such as defined in the Moranda case, *supra*. In either view, if the motorman was a fellow servant of the deceased, the plain-

tiff, under the law, could not recover damages from the common master for an injury caused by the negligence of the motorman; and if, on the other hand, the motorman was not a fellow servant of the deceased, then the master would be liable for the negligence of the motorman. The question of whether the motorman and the deceased were fellow servants is therefore of vital importance under the facts of the record now before us. In Bennett v. Chicago City Railway Co., 243 Ill. 420, 428, it is said: "Whether two persons, servants of a common master in a given case, are fellow servants is a mixed question of law and fact. Lake Erie & Western Railroad Co. v. Middleton, 142 Ill. 550. The definition of fellow servant is a question of law. Indianapolis & St. Louis Railroad Co. v. Morgenstern, 106 Ill. 216; Hartley v. Chicago & Alton Railroad Co., 197 Ill. 440. The question of the relation of fellow servants is ordinarily one of fact, and only becomes a question of law when there is no dispute with reference to the facts, and the evidence, with all legitimate inferences to be drawn therefrom, is such that all reasonable and intelligent men must reach the same conclusion." In that case, a conductor on a Cottage Grove avenue car was injured by the alleged negligence of the motorman of a Sixty-third street car, which collided with the Cottage Grove avenue car at a crossing after the motorman had applied his brakes and endeavored to stop his car, but was unable to do so, because the tracks were greasy. In the dissenting opinion, two of the judges of the Supreme Court were of the opinion that the conductor and motorman were fellow servants, but in the opinion of the majority of the court, it is said (p. 432): "All reasonable minds would not reach the same conclusion on this question on the facts in this case. That question was, therefore, one of fact that was properly submitted to the jury." We are of the opinion that the same is true of the facts in this case, viz: That all reasonable minds would not

reach the same conclusion from such facts, upon the question whether the motorman and the deceased were fellow servants. It was, therefore, a question of fact for the jury, and the instructions mentioned should not have been given without modification.

Complaint is also made of the refusal of the court to give an instruction which told the jury that if they believed from the evidence that there existed a reasonably safe way, and also a dangerous way, to do the work, each of which ways was equally open to the deceased, then "if Dressel selected the unsafe method of doing said work through carelessness or because it involved less exertion on his part, then the plaintiff cannot recover." There are three objections to this instruction: First, in substance, it was covered by other instructions; second, it assumes that Dressel selected an unsafe method, and third, it omits the necessary qualification that the method selected contributed to his injury. There was no error in refusing the instruction.

It is also urged that the declaration does not state a cause of action, because (it is said) the *evidence* shows that it is a master and servant case, and no facts are alleged showing that the *master* owed any duty to the deceased, or that the deceased did not assume the risk, or that the alleged negligence was not the act of a fellow servant. While it is true that the evidence showed that the relation of master and servant did exist, yet neither count of the declaration alleges that such a relation existed, and in neither count is any breach of a master's duty charged or relied on as a ground for recovery. The declaration is drawn entirely upon the theory that the defendant owed to Dressel, as a person lawfully upon a public highway, the duty of so operating its street car thereon, by keeping a proper look out, and by running its car with reasonable speed, as not to injure him while he was exercising due care for his own safety. We have been

referred to no authority for the proposition that where a declaration does not seek to recover for any breach of a master's duty, and does not allege facts tending to show that the relation of master and servant was in any way involved, it is necessary for the plaintiff to allege facts showing that he did not assume the risk and that he was not a servant of the defendant. If that were true, such negative averments would be necessary in every case where a street car company negligently ran into a man or a wagon on a public thoroughfare. It seems to be assumed by appellant's counsel, that a street car company owes no duty to one who is its servant unless such duty arises out of the relation of master and servant. Such an assumption overlooks the obvious fact that an employe does not cease to be a member of the community simply because he has an employer. A street railway company owes to all persons who, in the exercise of due care, are lawfully using a public street, the duty of exercising reasonable care in the operation of its street cars over such street; and the declaration proceeds entirely upon that theory. The fact that the evidence shows that the relation of master and servant exists may furnish a defense or it may not, according to the facts of the case. Considered purely as a pleading, we think the declaration states a good cause of action.

For the reasons indicated, the judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*