## The Harold.

*(District Court, S. D. New York.   June 30, 1884.)*

PERSONAL INJURIES—FELLOW-SERVANTS—MASTER AND SERVANT — COMMON UNDERTAKING.

    The libelant was one of several men procured by a stevedore to shift coal in a vessel, all of whom were paid for by the ship, by the day, and he was injured, without his own fault, by a board which fell through the hatch in consequence of the winchman's starting up the steam-winch without notice to his fellow-workman, whose business it was to tend the ropes at the platform. The winchman was furnished by the ship and not by the stevedore, and was a competent person. *Held,* that all were in the common service of the ship, and were co-laborers in the same undertaking, and that the ship, therefore, was not liable for the injury, no breach of any duty owed by the ship or her officers being shown. *Held, also,* that it was immaterial that the winchman was paid by the month directly by the ship, and the other men by the day, through the stevedore; the former being under the direction of the men at the platform when to start or stop, and all being under the common supervision of the stevedore, or his foreman, and employed in a common undertaking.

In Admiralty.

*L. C. Dessar,* for libelant.

*Jas. K. Hill, Wing & Shoudy,* for claimants.

BROWN, J. The libelant was one of a number of men procured by a stevedore to shift coal in the steamer Harold. He was at work on the twelfth of December, 1880, in the hold beneath the after hatch, in tending and filling the tubs as they were lowered and raised. While so employed, a plank fell through the hatch and struck his foot, producing a severe injury, for which this action is brought. The hatch above was mostly covered by two platforms running athwart ships across the fore and aft end of the hatch, leaving a space of four or five feet between, sufficient for the tubs to be hoisted through. One of the stevedore's men stood upon each platform guiding the ropes as the tubs were hauled up, so that they should not hit the platform. It was the business of the stevedore to arrange this platform, and he had done so. The two men employed there had, of their own volition, obtained two other planks, which they laid fore and aft across from one platform to the other, near the coamings. The tubs were raised by a steam-winch, which was tended by a man supplied for that purpose, as was customary, by the vessel, and who acted under the orders of the men at the platform; all the men about the job, except the winchman, being procured by the stevedore, and paid by the day by the ship. About 9 or 10 o'clock in the forenoon the winch was stopped for about five minutes to be oiled, and to have some bolts screwed up. It was a very cold day, and during this interval the men on the platform stepped off, and walked about the deck to keep themselves warm. It was the duty of the men at the platform to give orders to the man at the winch when to stop, go ahead, or back. When the winch had been fixed, the man that tended it started it up, without any order from the men at the platform, and while they were a few feet distant from it, and without giving notice to them that he was about to start up. A tub which was a few feet only below was thus raised up against the platform and lifted it up, and thereby displaced one of the loose fore and aft planks, so that it fell through the hatch and injured the libelant, as above stated.

The libelant was without fault, and was injured in the performance of his duties upon the ship. He cannot recover against the vessel, however, except upon the ground of some fault attributable to the ship; that is, some negligence or remissness on the part of her owners or officers in respect to some duty which they owed to the libelant in connection with the service in which he was engaged. In *The Kate Cann*, 2 FED. REP. 241, 8 FED. REP. 719, the ship was held liable for the giving way of some braces, which caused injury to the libelant; in *The Rheola*, 19 FED. REP. 926, for the insufficiency of a chain supplied by the ship for hoisting. In *Dwyer* v. *National Steam-ship Co.* 4 FED. REP. 493, the libel was dismissed because the ship owed no duty to keep the hatch covered, or the guard over it properly secured.

Upon the evidence in this case there appear to have been three faults that contributed to the injury: *First*, and chiefly, that of the

man at the winch in starting it up without orders, and without notice to the men at the platform; *secondly*, negligence in the latter in the use of loose boards at the platform in no way secured against falling through; *thirdly*, the absence of the men from their post at the ropes when the winch was started up. Considering the coldness of the day, however, the momentary absence of the men in stirring about to keep themselves warm while the winch was being fixed, was not unreasonable, and any fault in this regard is of a very minor character. The men on the platform, as well as the libelant, were substantially in the employ of the ship, though procured by and through the stevedore. The stevedore did not do this work by any independent contract. The agreement was that the coal should be shifted "by day's work, at the' ship's expense," and the stevedore procured all the men except the man at the winch, who was furnished by the ship. The wages of the men were paid by the ship through the stevedore. The winchman was a co-laborer with the stevedore's men, and was engaged in a part of the same employment; namely, that of shifting coal. Had he been procured by the stevedore, the case would clearly have fallen under the general rule that laborers take the risk of injuries arising through the negligence of their co-laborers in the same common service. *Hough* v. *Ry. Co.* 100 U. S. 213; *The City of Alexandria*, 17 FED. REP. 390–392, and cases there cited; *The Victoria*, 13 FED. REP. 43.

I do not see how any distinction can be made in the application of this rule from the mere circumstance that the man at the winch was paid directly by the ship, by the month, while the other co-laborers were paid by the day, by the ship, indirectly through the stevedore who procured them. The reason why the laborer cannot recover is because he is regarded by the law as taking the risk of the negligence of fellow-laborers engaged in the same common undertaking. He does not, however, take the risk of the fitness or sufficiency of the machinery, structures, or implements furnished by the employer, nor the risk of negligence of servants or laborers in any independent department of work, such as the stowage of the dunnage was in the case of *The Kate Cann, ut supra*. Against these he has no means of protecting himself, nor can he be reasonably supposed to assume the risks arising from a kind of work wholly independent of that about which he is engaged.

The man at the winch, in this case, was performing a necessary part of the same work for which the libelant was employed. The handling of the winch was as essential as tending the ropes and the tubs at the platform, or shoveling the coal in the hold. The risk of any inattention by the man at the winch was as plainly one of the risks of the libelant's employment as the risk of inattention by the men at the platform. *Bartonshill Coal Co.* v. *Reid*, 3 Macq. 266; *Same* v. *McGuire*, Id. 307; *Thompson* v. *Chicago, M. & St. P. Ry. Co.* 18 FED. REP. 239; *Wood* v. *Coal Co.* 121 Mass. 252; *Crispin* v. *Bab-*

*bitt*, 81 N. Y. 516; *Buckley* v. *Gould, etc., M. Co.* 14 FED. REP. 833. In the case last cited, and the note thereto, (page 841,) the authorities are collated as to who are to be deemed fellow-servants; and many additional ones will also be found in the note to *Charles* v. *Taylor,* in Moak's English Reports, vol. 30, pp. 337–349. The man at the winch was, in this case, acting under the immediate orders and direction of the stevedore's men at the platform. It is immaterial that he was paid directly by the ship. *Rourke* v. *White Moss Colliery Co.* 2 C. P. Div. 205; *Murray* v. *Currie,* L. R. 6 C. P. 24; *Johnson* v. *Boston,* 118 Mass. 114; *Ill. Cent. R. Co.* v. *Cox,* 21 Ill. 20. All the other men being paid by the day by the ship, they were in fact under the ultimate control of the officers of the ship, although the general superintendence of the work was in the stevedore and his foreman. This superintendence, however, included the winchman as much as the others; so that it is really immaterial here whether the men be regarded as the servants of the stevedore or the servants of the ship, since all were under a common direction and in a common service.

The evidence does not show that the work was stopped through any unfitness of the winch, or that the fixing required was different from what is occasionally needed in oiling and turning up the screws. Nor does it appear that the man at the winch was incompetent or unfit for his position, or that any negligence or remissness is chargeable upon the officers of the ship in selecting him for that work. The duties to be performed by him were of a very simple character, being only the handling of a brake at the winch, and the accident is attributable chiefly to his momentary inattention in starting the winch without notice.

As there appears to have been no remissness attributable to the ship or its officers, the libel must be dismissed.