THE ISLANDS.

LONERGAN v. THE ISLANDS.

*(District Court, D. New Jersey.   August 19, 1886.)*

MASTER AND SERVANT — LIABILITY OF MASTER FOR NEGLIGENCE OF FELLOW-SERVANT.

  Where a person, while assisting in hoisting and shifting coal on board a steamer, was injured by the falling of a skid caused by the incompetency and carelessness of a fellow-servant, and not by any defect in the machinery, the steamer was not held liable for the injury.[1]

In Admiralty.

*Charles E. Hill,* for libelant.

*Jas. K. Hill, Wing & Shoudy,* for claimant.

WALES, J.   This is a libel to recover damages for personal injuries. · The libelant on the thirty-first of October, 1885, while shoveling coal on board the steam-ship Islands, then lying in her dock at Hoboken, New Jersey, was seriously and permanently injured by the falling of a heavy skid on his left leg, which was so badly crushed as to require amputation below the knee.   He alleges that the accident was caused by the carelessness and negligence of the officers or other persons in charge of the ship.   He had been employed, with several other longshore-men, by a stevedore named Myers, to assist in hoisting and shifting the coal, and was stationed on the between-deck to help in filling the empty tubs as they came down.   The tubs, holding about 400 pounds each, were hoisted by a steam-winch driven by an engineer in the employ of the ship. The fall and tackle had been rigged under the personal direction of Myers; the rope, etc., being taken from the locker of the ship.   The first rope selected for a fall was too short; and another being obtained, which also proved to be too short, was lengthened by attaching to one end of it, by a bowline knot, a chain-sling.   A double whip was rigged, so that an empty tub went down as a loaded one came up.   Two skids, each eight or nine feet long,.by three feet wide, were placed loosely athwart the bunker hatch, three and one-half to four feet apart, and extending half a foot over each side, leaving enough space for the easy passage of the tubs between them.   A gangway-man stood on each skid to keep the fall and tubs clear of the edges.   The libelant had been working for almost an hour, when the after-skid was upset by the bowline or tub coming in contact with it, and fell below on the libelant.   The complaint is that the sling was not fastened to the rope by a splice instead of a bowline, and that the skids were not tied to the sides of the hatch; that, if either of these things

[1] See note at end of case.

had been done, the accident could not have happened. The bowline was about the size of a man's fist. The chain-sling was provided with a hook to hold the handle of a tub. Exactly how the accident happened—whether by the bowline, the hook, or the tub catching or striking the skid—does not appear. No one saw it. The gangway-man, Deady, who stood on the after-skid, and whose duty it was to keep the rope and tub clear on that side, was unable to tell. He first said that the bowline caught and threw over the skid, but, on being questioned further, admitted that he did not see the fall catch, "but it was said that it just happened in a second," etc. He had his hand on the rope at the time, and he "had to keep it pretty clear, as it was going more astern all the time." He gave the signal to the engineer to go ahead. He also said that "the skids were that close together all the time it was a pretty sharp lookout for us that the tubs would not strike them."

Evidently this man, by culpable inattention to his duty, was, as far as human agency is concerned, directly responsible for the accident. It was not very difficult to keep the rope or tubs clear of the skids, for it had been done on this occasion prior to the accident, and on hundreds of occasions before in the prosecution of the same kind of work, with precisely similar appliances, including bowline knot, and loose skids. It is customary with longshore-men to use bowlines as often as splices under like circumstances; and, although the latter may make a smoother fall and offer less obstruction, the former are not considered to be specially or ordinarily dangerous. The skids are seldom fastened to the sides of the hatch; the workmen, for the most part, preferring to have them laid over loosely, so that they may go on deck without the trouble of unfastening them. The general custom is not to fasten them. The libelant thought the skid was tied, but the weight of evidence as to the custom is as just stated. One of his own witnesses, Lynch, could not say whether or not the skids were fastened at the time of the accident, but he had worked hundreds of times when they were not. Under this view of the facts preceding and attending the upsetting and fall of the skid, it is sufficiently clear that the misfortune which befell the libelant was solely due to the negligence and fault of a fellow-workman; and, according to the well-settled rule and policy of the law, he must be presumed to have accepted all risks of incompetency and carelessness on the part of his fellow-servants engaged in the same work. Without there is something else in the case, he is therefore without remedy.

But it was contended by the libelant's proctor that the instruments and appliances furnished by the ship for hoisting the tubs were insufficient and defective; that the rope used for a fall was too short, and had to be lengthened by the dangerous bowline; that the skids were not provided with fastenings; and that the accident was the result of these deficiencies. If this were so, there might be some ground for holding the ship liable, since the libelant did not take the risk of

the strength or security of the ship's machinery, rigging, or structures. The evidence does not, however, support such a statement of facts. The officers of the Islands had nothing to do with the shifting of the coal, except to direct where it should be deposited. The stevedore was employed to do the whole work. He engaged the men, he and they being paid by the day by the ship, and superintended the work from beginning to end. He procured the rope from the ship's locker; and if there was negligence in tying the bowline, instead of making a splice, the fault was his, and not the ship's, and the same may be said in reference to leaving the skids unfastened. The evidence does not show that it was any part of the duty of the ship's officers to supply any of the machinery, rigging, or articles used by the stevedore, excepting, perhaps, the steam-winch.

After a careful consideration of the whole case, we have been unable to find any facts or principle which would justify a decree against the claimant.

*The Harold,* 21 Fed. Rep. 428, a case clearly resembling the present one, contains a clear exposition of the law applicable to a like condition of facts. The opinion of the learned judge, and the authorities cited by him, fully sustain the conclusion to which we have come.

The libel must be dismissed.

### NOTE.

Respecting freedom from liability on the part of the master for an injury caused by the negligence of a fellow-servant, see Northern Pac. R. Co. v. Herbert, 6 Sup. Ct. Rep. 590; District of Columbia v. McElligott, 6 Sup. Ct. Rep. 884; Trihay v. Brooklyn L. M. Co., (Utah,) 11 Pac. Rep. 612, and note; Kansas Pac. R. Co. v. Peavey, (Kan.) 8 Pac. Rep. 780, and note; Gardner v. Michigan Cent. R. Co., (Mich.) 26 N. W. Rep. 301, and note, 306; Hoar v. Merritt, (Mich.) 29 N. W. Rep. 15, and note; Baldwin v. St. Louis, K. & N. R. Co., (Iowa,) 25 N. W. Rep. 918; Matson v. Chicago, R. I. & P. R. Co., (Iowa,) 25 N. W. Rep. 911; Farmer v. Central Iowa Ry. Co., 24 N. W. Rep. 896, note; Chicago & N. W. Ry. Co. v. Snyder, (Ill.) 7 N. E. Rep. 604; Clifford v. Old Colony R. Co., (Mass.) 6 N. E. Rep. 751; Benzing v. Steinway, (N. Y.) 5 N. E. Rep. 449; Pittsburgh, C. & St. L. Ry. Co. v. Adams, (Ind.) 5 N. E. Rep. 187, and note, 197; United States Rolling-stock Co. v. Wilder, (Ill.) 5 N. E. Rep. 92; Philadelphia I. & S. Co. v. Davis, (Pa.) 4 Atl. Rep. 513; Dealey v. Philadelphia & R. R. Co., (Pa.) 4 Atl. Rep. 170; New York, L. E. & W. R. Co. v. Bell, (Pa.) 4 Atl. Rep. 50, and note; Reese v. Biddle, (Pa.) 3 Atl. Rep. 813; Chicago, M. & St. P. Ry. Co. v. Ross, 5 Sup. Ct. Rep. 184; S. C. 8 Fed. Rep. 544; Garrahy v. Kansas City, St. J. & C. B. R. Co., 25 Fed. Rep. 258, and note, 262; Howard v. Denver & R. G. Ry. Co., 26 Fed. Rep. 837; Conley v. City of Portland, (Me.) 3 Atl. Rep. 658, and note; and also note to Whitelaw v. Memphis & C. R. Co., (Tenn.) 1 S. W. Rep. 39.