## HERMANN v. PORT BLAKELY MILL CO.

(District Court, N. D. California. January 22, 1896.)

No. 11,176.

1. MASTER AND SERVANT—RULE OF SAFE PLACE.

Libelant, the mate of a vessel, was engaged in the between decks, with a gang of men, in loading lumber. A chute led from the wharf to a port in the vessel's side, below the level of the wharf, and the pieces of lumber were placed in the chute by another set of men, under the charge of a foreman, on the wharf, and were allowed to slide down into the between decks. It was the duty of one of the men on the wharf to give a warning cry when a piece of lumber was placed in the chute, in order to enable those below to get out of the way. If this warning cry was given, there was no danger to the men below, and the place in which they were working was in itself proper and safe, and the man to whom the duty of giving warning was intrusted was a competent and proper person. He omitted to give the warning at the time of sending a large piece of lumber down the chute, and libelant was struck by it, and injured. *Held*, that the master's duty to furnish a safe place for his employés to work did not extend beyond employing a competent and proper person to give the necessary warning, nor include the actual giving of such warning in each particular case.

2. NEGLIGENCE—FELLOW-SERVANTS.

*Held*, further, that libelant and the workman on the wharf, who were both employed by the owner and engaged in the work of loading the vessel, were fellow servants, and the libelant, having been injured by the negligence of such workman, could not recover from the owner of the vessel.

Libel in personam to recover $10,000 as damages for injuries alleged to have been caused by the negligence of the defendant corporation through its employé on board the American ship Kate Davenport, while libelant was engaged, as first mate, in supervising and assisting the loading of the vessel with lumber. Libel dismissed, the injury having been received through the negligence of a fellow servant.

H. W. Hutton, for libelant.

Van Ness & Redman, for defendant.

MORROW, District Judge. The libelant sues for $10,000, as damages for injuries alleged to have been caused by the negligence of the defendant corporation, through one of its employés, on board the American ship Kate Davenport, while he was engaged in loading the vessel with lumber at Port Blakely, state of Washington.

The facts of the case are, briefly, these: Libelant was the first mate of the vessel, and, at the time he sustained his injury, was in the between decks on the port side, supervising and assisting in the loading of lumber. He had a gang of four men working under him, receiving the lumber. The vessel was lying head on to the wharf, and had chutes extending from the wharf into both portholes,—one on the starboard and the other on the port side. The mate was stationed in the between decks on the port side, and was receiving lumber through the porthole on that side of the vessel.

The wharf, being considerably higher than the portholes, afforded an efficient and easy method of loading. On the wharf there was another set of men, under the charge of a foreman, who were engaged in sending the lumber into the hold and between decks by means of the chutes. These men would place a piece of lumber on one of the chutes, and slide it down into the vessel, where it was received by the mate and his men, and piled up with the other lumber. It appears that some of the lumber, depending on the size and weight of the piece, would come down with considerable force and momentum, which made it necessary for those in the between decks to get out of the way. To avoid any disaster from this danger, it was the custom and the duty of some person on the wharf to give a signal or warning cry to those in the vessel when a piece of lumber was started down one of the chutes, or just after it had been started. This warning was given, not merely as a matter of convenience, but as a danger signal, to apprise those in the vessel, so that they might be on the lookout for the lumber, and get out of its way as it came rushing down. It was therefore a signal which was necessary to the safety of those in the vessel, and was relied upon by them to avoid any risk of injury. At the time the accident occurred through which libelant was injured, he was engaged, with the other men, in the act of lifting a piece of lumber, described by the witnesses as 40 feet long, and 10 by 10 in breadth and thickness. While doing this, to remove it on a roller from the end of the chute, another piece of larger dimensions, 60 feet long, and 12 by 12, unexpectedly, and without the usual signal having been given, or any warning to apprise those in the between decks of its having been started on the chute, came down, and, before libelant could get out of the way, struck him on his right leg, severely injuring that limb. Another man, who was close by at the time, also had a very narrow escape from being struck by this piece of lumber. The testimony is uncontradicted that the signal was not given on this particular occasion. It appears that a like omission had occurred a couple of days previously, and that the mate had called the attention of the foreman in charge of the men on the wharf to this delinquency, and requested him to caution his men to be more careful. It also appears that there was no particular danger connected with the loading provided the warning signal was given in ample time to permit the men in the hold to watch for the approaching lumber, and get out of its way as it came down.

From this recital of facts, it may be taken as established that on this particular occasion, when libelant was injured, no warning signal was given by the person on the wharf whose duty it was to give such signal, and that this was such negligence as contributed proximately to the accident and injury sustained by libelant. The question then occurs, is the employer, the Port Blakely Mill Company, liable to the libelant for this negligence of his coemployé? It is contended by counsel for defendant that the company cannot be held responsible, because libelant was a fellow servant with the employé whose duty it was to give the warning signal, and that.

he was not injured through any fault or omission of duty which the company, as employer, owed to its employés. The libelant's counsel argues that this contention is not sound, for the reason that, among the positive duties and obligations which the employer owes to his employés, is that of providing a safe place for the employés in which to work; that, applying this rule to the case at bar, it was necessary for the maintenance of that safety to give warning as each piece of lumber was sent down into the hold of the vessel; and that the giving of this warning was one of the duties which the law imposes upon the master personally, for failure to perform which, whether it be his personal negligence or of his servant, acting in his stead, damages may be awarded.

It is undoubtedly true that the master assumes the duty towards his servant of providing him with a reasonably safe place in which to work; that this duty is a positive and personal one; and that, if delegated to a subordinate, it remains, nevertheless, in law, the act of the master. McKinney, Fel. Serv. p. 73, § 28; Wood, Mast. & S. p. 695, § 334; Shear. & R. Neg. (3d Ed.) p. 119, § 92; 7 Am. & Eng. Enc. Law, p. 830, and cases there cited; Anderson v. Bennett (Or.) 19 Pac. 765.

The rule is ably and clearly stated by Mr. Justice Brewer in Railroad Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914, as follows:

"A master employing a servant impliedly engaged with him that the place in which he is to work, and the tools or machinery with which he is to work or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and, when he employs one to enter into his service, he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore, it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other."

See, also, Hough v. Railway Co., 100 U. S. 213; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, and cases there cited.

The rule itself is well settled. The question here is whether the negligence of the person on the wharf whose duty it was to give the warning signal, and who failed to do so, was a breach of the master's duty to furnish libelant a reasonably safe place to work in, or whether it was the negligence of a fellow servant, not engaged in the performance of a positive duty required of the master. It is important to observe in this connection that libelant was not injured by reason of any defect or inherent danger in the premises or place where he was

engaged in working, which the master knew or should have known, and which libelant did not know; but he was injured solely by reason of the fact that the person whose duty it was to give the warning signal omitted to do so. No question was raised at the hearing as to the safety of the hold and between decks, so far as the place itself was concerned, nor as to the sufficiency and fitness of the implements and instrumentalities used in loading, nor as to the competency of the person whose duty it was to give the signal to discharge that service. No negligence on the part of the company in employing and selecting the particular individual to give the warning was shown, and, so far as that feature of the case is concerned, it may be taken as conceded that he was competent. The legal presumption is that he was competent, and that the master discharged his duty to the libelant in that respect, no proof to the contrary having been submitted. Beasley v. Fruit-Packing Co., 92 Cal. 388, 28 Pac. 485; Drake v. Railroad Co. (Sup.) 30 N. Y. Supp. 671; Potter v. Railroad Co. (N. Y. App.) 32 N. E. 603.

Having selected a competent person, the master has done all that the law requires of him, and any negligence of such coemployé is the act of a fellow servant, for which the master is, by the general law, exempt from liability. This view of the case is confirmed by inquiring into the danger which existed and its cause. The only fact that rendered the place unsafe was the failure to give the signal. But for that omission, it would have been, on the particular occasion when libelant was hurt, free from danger. The method of loading lumber pursued in this case, and the practice of giving signals of warning, so that those in the vessel could get out of the way as the piece of timber comes down the chute, is, as was testified, the usual and customary way of loading vessels with lumber on this coast. The libelant himself testified that, "if they give warning for every piece, no accident will happen. We have plenty of time to get away." It is difficult, therefore, under this state of facts, to see how the negligence of the coemployé can be imputed to the employer, without contravening the general and well-settled rule exempting the employer for the negligence of a fellow servant. The mere negligence of the servant does not prove negligence of the employer. Cooper v. Railroad Co., 23 Wis. 669. Had it been shown that the signal man was addicted to intemperance, or by reason of some physical defect or careless habits, which the employer knew or should have known, was unfit and incompetent to discharge his duties in a reasonably careful and proper manner, such a state of facts would tend to bring the case within the well-recognized exceptions to the general rule. But no such showing was made. The contention of counsel for libelant is that the place where libelant was working was rendered unsafe by reason of the fact that the person on the wharf whose duty it was to give the warning failed to do so, and that this negligence constituted a breach of duty on the part of the master to furnish a safe place for libelant to work in. The word "place," in my judgment, means the premises where the work is being done, and does not comprehend the negligent acts of fellow

servants, by reason of which the place is rendered unsafe or dangerous. The fact that the negligent act of a fellow servant renders a place of work unsafe is no sure and safe test of the master's duty and liability in this respect, for it may well be said that any negligence which results in damage to some one makes a particular spot or place dangerous or unsafe. To so hold would virtually be making the master responsible for any negligence of a fellow servant which renders a place of work unsafe or dangerous. It would be doing the very thing which it is the policy and object of the general rule not to do. It would create a liability which the master could not avoid by the exercise of any degree of foresight or care. In this case the person who was detailed to give the warning signal, and omitted to do so, was, undoubtedly, both in reason and upon authority, a fellow servant of libelant. They were both engaged in a common employment, viz. that of loading lumber; both were employed and paid by the same common master, the Port Blakely Mill Company.

Judge Thompson, in his work on Negligence (volume 2, p. 1026, § 31), gives the following general rule:

"That all who serve the same master, work under the same control, derive authority and compensation from the same common source, are engaged in the same general business, though it may be in different grades or departments of it, are fellow servants, who take the risk of each other's negligence."

Cooley, Torts, p. 541, note 1; Wood, Ry. Law, § 338; Beach, Contrib. Neg. p. 338, § 115.

The case most directly in point, both as to facts and the law enunciated, is Steamship Co. v. Cheney (Ga.) 12 S. E. 351. It appeared there that the plaintiff, as in this case, was working in the hold of a vessel. He was engaged in receiving and stowing bales. The bales were thrown down through the hatch, and the company had placed a man at the hatchway to give warning to those in the hold whenever bales were thrown down. It appeared that upon one occasion no warning was given, and the complainant was injured by a bale which was thrown down. The hatch tender was usually the engine driver, or one of the hands employed to assist in loading the vessel. The court held that such person, whoever he might be, was a fellow servant with the complainant. Simmons, J., used the following language:

"He [the hatch tender] was engaged by the company in the same business that all the other hands of the gang were engaged in, to wit, the loading of the vessel with freight. He was therefore a coemployé with the other persons engaged in this business; and if, when stationed at the hatchway for the purpose of giving notice to the hands below, he failed to give that notice, or if he absented himself from the hatchway, and while absent some other person engaged in the business threw the bales down into the hold, without notice to those below, and the plaintiff was thereby injured, it was in consequence of the negligence of a coemployé, and, under the law, he cannot recover for such negligence."

And the verdict in favor of plaintiff was reversed, and a new trial granted.

The same case came up again before the court, on a second appeal, and the opinion of the court is reported in 19 S. E. 33. Upon the sec-

ond trial, the lower court granted the defendant a nonsuit. But a materially different state of facts was developed on the second trial. It appeared that, before the plaintiff went into the hold, the foreman in charge of the work had promised him that a man would be stationed at the hatchway to give warning as the bales were about to be thrown down. It thus appears that there was an express promise that some one should be stationed at the hatchway to give warning. The appellate court found, from the facts, that this promise had not been fulfilled, and that no one had been detailed to give warning, as plaintiff had requested. It therefore reversed the judgment of nonsuit. The court say:

"The evidence in this case tends to show that it was essential to the safety to those employed in the hold of the vessel, at the time in question, that a 'hatch tender' should be so stationed at the hatchway to warn them when bales were about to be thrown into the hold; and, if this was so, it was the duty of the company to supply a person to be stationed at the hatchway for that purpose. If all the men employed in loading of the ship were engaged in other parts of the work, from which none of them could be spared to give warning at the hatch, the number of employés ought to have been increased, and one of them directed to perform this particular service. So long as no employé was charged with the duty of giving warning at the hatch, there was a failure on the part of the defendant to carry out its implied contract with those employés for whose safety such warning was necessary."

But in the case at bar there was no such failure to carry out the employer's duty. He did furnish a person to give the warning signal. This person was, so far as the evidence shows, competent to discharge that duty. The employer, therefore, did all that was required of him by law. For any negligence of such person so employed, resulting in damage to a coemployé, he is not liable. One of the ordinary risks which employés assume is the negligence of fellow servants.

With respect to this question, the same judge, in the above case, on the second appeal, said:

"If the foreman complied with his promise, and stationed a man at the hatch, and the person so stationed negligently absented himself, without the knowledge of the foreman, his absence would be the negligence of a fellow servant, and not of the company."

In neither of these decisions does the court advert to the doctrine, contended for by counsel for libelant, that the duty to give warning is one personal to the employer, and that, if a subordinate be delegated to perform it, he is a vice principal to that extent, and not a fellow servant. If such a doctrine be sound, it was certainly applicable to the facts of that case as they appeared upon the first appeal. There, as here, a failure to give the customary warning signal rendered the work unsafe and dangerous, and it was by reason of the failure to give such warning that the plaintiffs in both cases were injured. It is significant, therefore, that no such doctrine as is here contended for was even alluded to by the court.

In the case of The Harold, 21 Fed. 428, the libelant was one of several men procured by a stevedore to shift coal in a vessel, all of whom were paid for by the ship, by the day; and he was injured,

without his own fault, by a board which fell through the hatch in consequence of the winch man's starting up the steam winch without notice to his fellow workman, whose business it was to tend the ropes at the platform. The winch man was furnished by the ship, and not by the stevedore, and was a competent person. It was held by Brown, J., that all were in the common service of the ship, and were colaborers in the same undertaking, and that the ship, therefore, was not liable for the injury, no breach of any duty owed by the ship or her officers being shown. In Cooper v. Railroad Co., 23 Wis. 668, a flagman, whose duty it was to place a flag as a signal of danger at a place where some rails had been taken up, negligently put it in such a place that it could not be seen in time to avert a train running into a gap in the road, resulting in the death of the plaintiff, who was a brakeman on the train. It was held that the two were fellow servants. In The Islands, 28 Fed. 478, the libelant, a longshoreman, was employed in the hold of the vessel, shoveling coal. A gangway man was stationed at the hatch, to keep the tubs of coal clear of the sides of the hatch, as they were raised or lowered; in other words, to maintain the safety of the place below, where claimant was working. Through his negligence libelant was injured. It was held that there could be no recovery, because of the fact that the libelant and the gangway man were fellow servants. In The Furnessia, 30 Fed. 878, it was held that the boatswain of a ship loading lumber, handling the steam winch by which the lumber was lowered into the hold, and the libelant, a stevedore engaged in the loading, were fellow servants. In The Servia, 44 Fed. 943, the libelant, who was engaged in loading iron in the hold of a steamship, was injured through the negligence of the guy tender or of the engineer, in allowing the skid, in ascending to the deck, to catch, and in not stopping the engine. It was held that they were fellow servants with libelant, and that the only obligation of the ship was to see that the instruments used were reasonably sound and fit for the service. In The Walla-Walla, 46 Fed. 198, a longshoreman, assisting in loading a vessel, and the second mate, were held to be fellow servants. In Steamship Co. v. Merchant, 133 U. S. 375, 10 Sup. Ct. 397, the stewardess and the carpenter and the porter were held to be fellow servants. It appeared that the carpenter belonged to the deck department, and the stewardess and the porter to the steward's department, but this was held to make no difference in their relation to each other of fellow servants.

The latest declaration of the doctrine of fellow servants by the supreme court is in the case of Railroad Co. v. Keegan, 16 Sup. Ct. 269, delivered December 23, 1895. It appeared from the facts of that case that the plaintiff was one of a crew of five men, comprising what was called the "night float drill crew"; that the duty of such crew was to take cars from the tracks on which they had been left by incoming trains, and place them on floats, by which they were transported across the North river to the city of New York. The drill crews, like others employed in the same yard, received their general instructions from the yard master, who had the power to

hire and discharge the men composing such crews, and had general charge of the yard and yard men, and assigned them to their duties. The crew of which plaintiff was a member were, however, under the immediate control and general management of one of their number, named O'Brien. He was sometimes called "foreman driller," sometimes "conductor of the drill crew." He was the one to direct what cars should be taken on by the engine, and when and where they should be moved to, when the movement should start, and where it should stop; and it was in obedience to his orders that one or other of the men employed in his crew went to one place or another, and coupled or uncoupled particular cars. The plaintiff, Keegan, attended to the coupling. He was instructed by O'Brien to couple a train onto certain cars beyond. While engaged in discharging that duty, he was injured through the negligence, it was claimed, of O'Brien. The negligence complained of was his ordering plaintiff to couple cars which he had just ordered to be uncoupled from a backwardly moving train to stationary cars beyond them, without himself being on the moving cars, so as to apply the brakes to check their motion in case such action became necessary, or seeing that some one was there to exercise control over their movement. Under this state of facts, two questions were certified up from the circuit court of appeals of the United States for the Second circuit. They were (1) whether the defendant in error and O'Brien were or were not fellow servants, and (2) whether, from negligence of O'Brien in failing to place himself or some one else at the brake of the backwardly moving cars, the plaintiff in error was responsible. The supreme court, in answering the first question, held that Keegan, the defendant in error, was a fellow servant with O'Brien. As to the second question, it was held that the plaintiff in error was not responsible for the negligence of O'Brien, as he was not discharging a positive duty of the master. In this connection, Mr. Justice White, delivering the opinion of the court, says:

"A personal, positive duty would clearly not have been imposed upon a natural person, owner of a railroad, to supervise and control the details of the operation of switching cars in a railroad yard; neither is such duty imposed as a positive duty upon a corporation; and, if O'Brien was negligent, in failing to place himself or some one else at the brake of the backwardly moving cars, such omission not being the performance of a positive duty owing by the master, the plaintiff in error is not responsible therefor."

If the negligence of the coemployé in that case was not the breach of a positive duty, owing by the master to the servant, to provide a reasonably safe place for him to work in, it is difficult to see how that doctrine can be applied to the facts in the case at bar to the extent of making the defendant responsible.

In none of the cases cited by counsel for libelant do I find the proposition he contends for sustained; at least, not so as to be deemed applicable to the facts of the case at bar. Those cases to which he refers, and in which the facts would seem to justify the application of such a doctrine, assuming it to be a sound one, went off on other grounds. While they involve the law of master and servant, in none of them is it laid down as a settled rule, under a

state of facts similar to those in the case at bar, that where a place in which an employé is directed to work is reasonably safe and free from danger, it is rendered unsafe because of the negligence of a fellow servant, through which negligence injury results to another employé. In this connection, let us briefly examine a few of the leading cases cited by him, and which he claims establish the correctness of his position.

In Mining Co. v. Whelan, 12 C. C. A. 225, 64 Fed. 462, a decision of the circuit court of appeals for this circuit (Ninth), it appeared that the plaintiff was injured through the negligence of a coemployé, known as his "boss." The duties of plaintiff were to break up rock in the ore pit, from which the broken rock was drawn, from time to time, through chutes, to a lower level, at which the chutes were closed by gates. The duties of the boss under whom he worked were to see that the men did their work, to direct them where to work, to notify them when rock was to be drawn through the chutes, and to direct when rock should be drawn through any particular chute. There was a conflict of evidence as to whether the boss was authorized to employ and discharge men at work under him. Plaintiff, who was at work on the top of a pile of rock, covering the head of a chute, was injured by being drawn through the chute with the rock. There was a conflict as to whether, on the occasion in question, the boss notified plaintiff that the chute was to be drawn. The trial court left the question as to whether or not the boss was a fellow servant with plaintiff to the jury. It was held by the appellate court that this course was a proper one, and, as the jury found for the plaintiff, that they must, necessarily, have determined that the boss and plaintiff were not fellow servants. Some parts of the opinion seem to sustain counsel's contention, but, taken as a whole, and considering the differences between the duties imposed on the boss in that case, who, to all intents and purposes, was a vice principal, and the duties imposed on the person whose business it was to give the warning signal in this case, I do not think that it is authority for his proposition. The court refers to the character of the "boss" and his relation to the plaintiff as follows:

"Did the court err in refusing to instruct the jury to find a verdict for defendant? The first and most important question is whether Finley, the night boss of the shift of workmen employed at the mine, was a fellow servant of the plaintiff. Finley's duties were to see that the men did their work, to direct them where to work, and to notify them when rock was to be drawn from the chutes. It was the duty of plaintiff to obey Finley's orders. Finley was his boss. Those questions are undisputed."

It was held that the court below did not err.

In the case at bar, libelant was injured through the negligence of a person who was in so sense a "boss" or vice principal. He was a coemployé, the danger from whose negligence was as obvious and as great as from that of those who were working with the plaintiff in the hold of the vessel. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914.

The case of Railroad Co. v. Charless, 7 U. S. App. 359, 2 C. C. A. 380, and 51 Fed. 562, is also referred to as authority for libelant's

contention. But in that case the plaintiff was a laborer employed by the railroad company, who was injured by the inability, because of a defective brake, to stop a hand car, on which he was engaged in the performance of his duty, in time to prevent a collision with a freight train. The hand car was in charge of the section boss of the company at the time of the accident, and was being run at a high rate of speed. The complaint also alleged that the telegraph operator at Cheney negligently failed to notify the plaintiff and his coemployés that, in going west on the section at that time, they would meet a freight train going east; and that the conductor and engineer of the freight train were negligent in running their train at great speed; and that the failure of defendant, through its agents, to use ordinary care in these particulars, was the proximate cause of the injury to the plaintiff. The amended answer admitted that it was the duty of the company to furnish its employés engaged in maintaining its track and roadbed with information concerning the movements of trains over the sections on which they were employed. A demurrer had been interposed to the complaint, on the ground that it did not state facts sufficient to constitute a cause of action, which was overruled. This was assigned as error, but the circuit court of appeals declined to disturb the ruling of the trial court. With respect to the employer's duty to furnish correct information concerning the movements of its trains, as set forth by the complaint in that case, the court said that it was a direct, positive duty which the company owed to such of its employés as were exposed to danger by the movement of trains. There is nothing in the opinion which supports libelant's contention that a mere coemployé, through whose negligence another employé is hurt, is a vice principal simply because he fails to give a certain warning signal, by reason of which negligence a place of work, otherwise safe, is rendered dangerous, and injury results.

In Railroad Co. v. Holcomb, a decision of the appellate court of Indiana, reported in 36 N. E. 39, it appeared that plaintiff, a car repairer, at work on defendant's repair track, was struck by a car pushed by a switch engine, which came on the track without his knowledge, because no notice was given of the approach of the train by the brakeman, the person who had been charged with that duty. It seems that the brakeman had other duties to attend to, and that his attention was principally devoted to them. It was held that, although the company had furnished adequate rules and regulations to notify car repairers of the approach of trains, yet that, as no proper means to carry out such rules had been made, the company was liable. It was held, therefore, not error for the trial court to refuse to give an instruction which directed the jury that, if the company had provided rules that notice should be given, it had fully discharged its duty to plaintiff. The court said:

"It was the duty of appellant to make reasonable and adequate rules for the protection of its workmen. To require actual notice to the workmen, as in this rule provided, is certainly good, so far as it goes; but we are not prepared to say, as a matter of law, that this was all that was necessary. It was as much the duty of the company to provide reasonably adequate

means for giving the notice as to require it to be given. The case in hand furnishes an apt illustration of the inadequacy of such a rule; the brakeman having devolved upon him this duty only as an incident to the principal duties of his position, and performing this duty in a perfunctory, halfway manner, his attention being really given to other matters."

The inapplicability of this state of facts to the case at bar is evident. Here, the employer did furnish adequate means to give the required signal. He did detail a person whose duty it was to give the warning; and this person was, presumably, competent and able to discharge that duty, nothing to the contrary having been shown. Furthermore, there was not the slightest intimation at the hearing that his duties were so numerous or exacting, or that he was otherwise so engaged, that he could not attend to the giving of the signals in a careful and proper manner. In the case just cited, the court, further on in its opinion, does give expression to views of the law which would seem to sustain the contention of counsel for libelant. But, after a careful reading of the opinion as a whole, I have come to the conclusion that these remarks were intended to be made with reference, and should be considered in subordination, to what the court, in the first of its opinion, deems to be the liability of the master in not furnishing adequate means to give the requisite warnings. The employer, undoubtedly, is under the positive duty of not only providing a competent person to give signals or warnings, when such a course is necessary in order to avert accidents and injury, but he must also provide a person whose duties are of such a nature that he can fully, properly, and carefully discharge the added duty of giving warnings. Obviously, the employer is not fulfilling his whole duty to his employés in detailing another employé to attend to signals or give warnings when the latter is so handicapped with other work that he cannot fully and properly discharge the duty of giving signals or warnings. Under this state of the facts, I cannot agree with counsel for libelant that that case is an unequivocal affirmance of the doctrine contended for. The same observation may be made with reference to the remainder of the cases cited by him, and it is unnecessary to review each authority referred to.

In my judgment, the libelant in this case was injured through the negligence of a coemployé, who, in law, is deemed to be a fellow servant, and not a vice principal. The employer discharged his full duty towards libelant when he provided a competent person to give the warning signals. Having done that, his responsibility for any injury sustained through the negligence of such coemployé to libelant was protected by the general rule which exempts employers from liability for injuries sustained through the negligence of fellow servants. Libelant, by his contract of employment, impliedly assumed all the ordinary risks of the business in which he was engaged, among which the negligence of fellow servants is recognized as one of the risks.

As was well said in Steamship Co. v. Merchant, 133 U. S. 375, 379, 10 Sup. Ct. 397:

"The case, therefore, falls within the well-settled rule, as to which it is unnecessary to cite cases, which exempts an employer from liability for injuries to a servant caused by another servant, and does not fall within any

exception to that rule which destroys the exemption of the employer when his own negligence contributes to the injury, or when the other servant occupies such a relation to the injured party, or to his employment, in the course of which his injury was received, as to make the negligence of such servant the negligence of the employer."

While the unfortunate accident to libelant cannot be too much deplored, still the rules of law on this subject are well settled, and must be maintained. The libel will therefore be dismissed.