## THE ROSALIE MAHONY.

(District Court, W. D. Washington, S. D. November 19, 1914.)

No. 1508

1. SEAMEN (§ 29*)—LIABILITY OF VESSEL FOR INJURY TO LONGSHOREMAN—NEGLIGENCE OF FELLOW SERVANTS.

Libelant, with another longshoreman, both employed directly by the ship, were engaged in loading and piling lumber on the deck of a vessel from a truck, when he was injured by lumber from another truck, which upset while being unloaded by two seamen near by. It was not shown that the trucks in use were unusual, unsuitable, or unsafe appliances, and the evidence tended to show that the truck upset by reason of the manner in which it was being unloaded by the seamen, who commenced unloading from one side, instead of from across the top. *Held*, that the injury was due to the negligence of fellow servants, for which the ship was not liable.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. § 29.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WORDS AND PHRASES—"BOX DOLLY."

A "box dolly" is a vehicle which has but one wheel, a wide cylindrical drum in the center of it, and is shaped like a box, the lower part of which extends down as far as the axis of the drum.

In Admiralty. Suit by Samuel Knudsen against the steamship Rosalie Mahony; Olsen & Mahoney, Incorporated, claimant. Decree for claimant.

Wedell Foss, of Tacoma, Wash., for libelant.

Ballinger, Battle, Hulbert & Shorts, of Seattle, Wash., for claimant.

CUSHMAN, District Judge. Libelant, in the employ of the Rosalie Mahony, an American steam schooner in the lumber-carrying trade from ports on Puget Sound to California ports, while engaged in stowing lumber being loaded thereon from a scow, was injured by part of a truck load of lumber falling on him upon the upsetting of the truck.

At the time of his injury libelant and another longshoreman were stowing lumber on the deck of the vessel. Other men were similarly engaged. It was broad daylight. Sling loads of lumber were being hoisted from a scow alongside the vessel by means of the vessel's steam winches, and were lowered upon trucks, which trucks were then pushed along the top of the deck load to the place where it was desired to stow the lumber, there being two men to each truck.

[1] Libelant and the longshoreman working with him were both experienced men. At the time of the injury they were both stowing a sling load of lumber that had been landed and handled as above indicated. Two other men, regular seamen of the ship, pushed another loaded truck to a point near where libelant was working, and commenced to unload it. In doing so they did not take off a layer of lumber entirely across the top of the load on the truck, but removed a part of several layers down one side of the truck, when it suddenly, and without any other apparent reason than the manner in which it was being unloaded, tipped over, striking and injuring the libelant's left foot seriously.

The loads of lumber on the trucks were somewhat larger than the loads ordinarily handled, this being occasioned by the fact that the lumber was loaded on the scow from the mill by use of a steam crane, which deposited the sling loads from the crane on the deck of the scow in large, regularly shaped loads, which loads on the scow were kept separate by placing under each load, and between the loads, blocks, to enable the convenient removal, after the depositing of the load, of the cable in which the load was carried by the crane.

When the scow was brought alongside of the ship, these sling loads of lumber, without being broken up, were removed from the scow by means of booms and steel cables on board the ship, being deposited, as stated, upon the trucks. Being originally made up at the mill, their size was determined without consideration of the trucks upon which they were eventually placed. These trucks were four-wheeled, with a 30x36-inch frame, the deck of which was about 20 or 22 inches high. The sling loads of lumber were about 8 inches wider than the top of the truck.

There is evidence tending to show that the load which tipped over was composed of long and wet timbers. The loading was being done under the direction of the mate. Libelant seeks to recover because no means were provided by which to steady the truck while it was being unloaded, because the sling load of lumber placed on the truck was too large, and was not placed upon the truck evenly and properly balanced,. and because the four-wheeled truck was used, instead of a "box dolly."

[2] There is no evidence in any way tending to support the first ground of libelant's contention. A "box dolly" has but one wheel, a wide cylindrical drum in the center of the vehicle, which is shaped like a box, the lower part of which extends down as far as the axis of the drum. The "box dolly" will never stand by itself. One end or the other of the load falls down and rests upon the deck.

The libelant's contention is that the "box dolly," being more difficult to upset, was the only safe and suitable appliance for use in such work; but the evidence fails to show that the truck used was an unusual, unsuitable, or unsafe appliance for the use to which it was being put. It may or may not have been more likely to tip over than a "box dolly." Its tendency so to do is not shown to have been so much greater than that of the "box dolly" as to show, it unfit to be used for this purpose, or not reasonably safe and suitable. It had compensatory advantages in the ease and speed with which it might be used.

The fact that the truck, after it had been loaded, was trundled over the top of the lumber already loaded for 15 or 20 feet, to the point where it was desired to unload it, where it was partly unloaded before it tipped over, warrants the finding that the proximate cause of its falling was the manner pursued by the two seamen engaged in unloading it, in that they did not remove the layers across the top of the load, but unloaded it from one side. This shows that, within the narrowest sense, the act causing the injury was that of a fellow servant engaged in the same common employment as libelant, for which claimant is not liable.

Even if it were conceded that the load put upon the truck was unusually high and large, and that that fact contributed to its falling, yet would the act of so loading the truck be the act of a fellow servant of libelant. Olson v. Ore. Coal & Nav. Co., 104 Fed. 574, 44 C. C. A. 51; Hermann v. Port Blakely Mill Co. (D. C.) 71 Fed. 853. The fact that unusually large loads of lumber were being handled on the trucks at this particular mill does not 'show incompetency on the part of the mate, nor any of the officers of the ship. Hermann v. Port Blakely Mill Co. (D. C.) 71 Fed. 853, at pages 856 and 857.

Libelant contends that the case of Olson v. Oregon Coal & Navigation Co. is not controlling, because in that case the vessel was being navigated at sea and not loaded within a state's jurisdiction; but the decision clearly holds that the maritime law and the common law, in respect to the fellow-servant rule, are the same, and the chief case relied upon as authority by the court in Olson v. Oregon Coal & Navigation Co. was Quinn v. Lighterage Co. (C. C.) 23 Fed. 363, where

libelant was injured through the negligence of the master of the vessel in giving a premature order and setting the winch in motion while the vessel was being loaded.

How giving consideration to the laws of the state of Washington would benefit libelant is not made to appear, as the court in this case heretofore held—upon claimant's exceptions to the libel—that the Workmen's Compensation Act of the state of Washington did not affect this court's jurisdiction in admiralty. The common-law or statutory liability under the state law (Workmen's Compensation Act [Laws 1911, c. 74]) has been abolished. The Bee (D. C.) 216 Fed. 709. Libelant has placed much reliance upon The Joseph B. Thomas, 86 Fed. 658, 30 C. C. A. 333, 46 L. R. A. 58. That decision does not support libelant's contention. As the court points out, the chief disputed fact in the case was whether the negligence was that of a stevedore or a sailor:

"Their argument [the ship and its owners] is that the injury to appellee occurred from the immediate act of the person who trod upon the covers; that such person was a fellow servant of the appellee, one of the employés of the stevedore who was loading the vessel, under a contract with the owners thereof, and over whom appellants had no control." 86 Fed. page 660, 30 C. C. A. 334, 46 L. R. A. 58.

It is true that the court finally held that the proximate cause of libelant's injury in that case was neither that of a fellow servant of libelant, nor of a seaman in the service of the ship, in negligently knocking the keg into the hatch, thereby injuring libelant, but that the negligence was that of the ship, in that its servant placed the keg and left it near the open hatch. But in the present case the longshoreman (libelant) was not in the employ of a contracting stevedore engaged in loading the vessel, but was a servant of and in the immediate employ of the ship, and together with the seamen—who were working with the upset truck—was engaged in the common undertaking of loading the vessel.

Decree will be for claimant.