MARY E. STEPHENS, Respondent and Appellant, *v.* THE HUDSON
VALLEY KNITTING COMPANY, Appellant and Respondent.

*Master and servant — the place in which work is performed, made unsafe by the act
of the employer.*

An employer is bound to furnish a reasonably safe place, considering the nature
of the employment, for the performance of his work by an employee, and he
will not be relieved from liability by the fact that the place may have been safe
at the commencement of the employment, if it is afterwards made unsafe by
the act of the employer or of his *alter ego*

*So held,* in the case of an employee in a knitting mill, injured by the falling of a
pile of rolls of cloth stacked near where the employee was required to work.

APPEAL by the defendant, the Hudson Valley Knitting Com-
pany, from a judgment of the Supreme Court in favor of the plain-
tiff, entered in the office of the clerk of Saratoga county on the 27th
day of December, 1892, upon a verdict rendered at the Saratoga
Circuit, and from an order denying the defendant's motion for a new
trial, made upon the minutes.

Also an appeal by Mary E. Stephens, the plaintiff in the above-
entitled action, from the order herein, setting aside the verdict herein
as excessive, and ordering a new trial, and from every part of said
order, the plaintiff thereby declining to stipulate to reduce said ver-
dict as provided by said order ; which said order was entered in the
office of the clerk of Saratoga county April 29, 1892.*

*George B. Wellington,* for the plaintiff.

*William Shaw* and *Matthew Hale,* for the defendant.

MAYHAM, P. J. :

The plaintiff while engaged as an employee of the defendant in its
mills, was permanently injured by the falling of a pile of rolls of
cloth, which was stacked on the floor near where the plaintiff was
engaged in her work.

The action was prosecuted on the theory that the defendant was
bound to furnish a reasonably safe place for his servants to perform
their work, and that by the defendant causing or permitting the
piling of these goods on the floor where the plaintiff was required

---

* This order appears to have been already considered at the General Term on a
former appeal and to have been reversed by that court by an order entered
December 25, 1892

to work, it thereby rendered the place unsafe, and is for that reason responsible for the injury.

The theory urged by the defendant is that the goods were piled in the place and manner in which they were, by the co-servants of the plaintiff, and if negligently piled it was the negligence of a fellow-servant, for whose negligent acts the defendant is not liable.

It is also insisted by the defendant that the plaintiff was apprised of the danger to which she was exposed and was herself guilty of contributory negligence.

There is proof in the case that before the injury complained of, Dowsley, the superintendent of the defendant, was warned by Mrs. Bancroft, who was in charge of that floor of the mill, that the pile of cloth would fall.

The pile was about seven feet high and consisted of rolls of cloth eighteen inches in diameter and each weighing about forty pounds.

There was evidence that the plaintiff heard the conversation as to the danger of the cloth falling, and she testified that she understood Dowsley to say, " it would be all right."

The plaintiff continued her work at a table near the pile of cloth, and it finally fell and she was injured. On the trial, after instructing the jury that their verdict must be a general verdict for one party or the other, and if for the plaintiff, must state the amount, the court submitted the following questions on which the jury was asked to find :

" *First.* Was injury to those working at the table where plaintiff worked, to be reasonably apprehended from the cloth that was piled ?

" *Second.* Was the attention of any officer of defendant called, before the accident, to the dangerous condition of the cloth as piled ?

" *Third.* Did plaintiff know the danger to be reasonably apprehended from the cloth as it was piled ?

" *Fourth.* Did she continue her work, relying on any actual assurance from any officer of the company that there was no danger, or that the danger would be removed ? "

The jury rendered a verdict for the plaintiff for $5,500, and at the same time answered in writing the questions submitted to them by the court, as follows : " To the first question, Yes. To the second question, Yes. To the third question, No. To the fourth question, Yes."

The rule is well settled that the employer is bound to furnish a reasonably safe place, considering the nature of the employment, for the performance of the work by the servant. The plaintiff was required to work at the seaming table, which was on the same floor where the cloth was piled and but a short distance from the pile, and one of the questions submitted to the jury was whether that was a reasonably safe place, with the cloth piled as it was.

In *Freeman* v. *Glens Falls Paper Mill Co.* (39 N. Y. St. Repr. 621), the court say : " If this risk related to the safety of the place of the employment, and not to the dangerous character of the employment itself, then it was the risk of the master and not that of the servant, for while the deceased took upon himself the risk of the dangerous character of the services, the employer assumed the risk and duty of furnishing a reasonably safe place for the performance of that service."

In *Cullen* v. *Norton* (52 Hun, 9), the court say : " One of the duties of the master was to furnish his servant a safe and proper place in which to prosecute his work. This duty continued to be the master's, no matter to what subordinate servant he delegated its performance."

When the master delegates to a servant or agent the performance of duties which he owes to his employees, he is liable for the manner in which the agent performs such duties.

The agent, under such circumstances, becomes the *alter ego* of the principal, who is bound by his acts or admissions, and knowledge in him is knowledge in the principal. (*Corcoran* v. *Holbrook*, 59 N. Y. 517 ; *Tendrup* v. *John Stephenson Co.*, 51 Hun, 462.)

" There are certain duties which concern the safety of the servant, which belong to the master to perform, and he cannot rid himself of responsibility to his servant for not performing them, by showing that he delegated the performance to another servant who neglected to follow his instructions or omitted to do the duty intrusted to him." (*Booth* v. *Boston & Albany R. R. Co.*, 73 N. Y. 38.) It is quite true, as urged by the defendant, that if the master furnish safe tools, utensils and place for the use of his servants, he is not responsible, if, without his fault or knowledge, it becomes unsafe by use, when they do not require the attention all the time of a skilled mechanic. (*Cregan* v. *Marston*, 126 N. Y. 568.)

But that rule does not apply to a case, where, as here, the place may have been safe at the time of the employment of the plaintiff, but is afterwards made unsafe by the act of the defendant or of his *alter ego.*

The jury have, in this case, found all the facts against the defendant necessary to uphold their verdict. And upon that branch of the case, it seems to us that their verdict is sustained by the evidence. The jury have also found that the plaintiff was not aware of the danger and had a right to rely upon the declaration of the defendant's agent that it would be all right.

This evidence is sufficient to uphold the conclusion of the jury after the verdict.

Assuming, as we must from the facts proved, that the conclusion of the jury upon the question submitted to them is supported by the evidence, their verdict for the plaintiff becomes the logical and inevitable result of such facts.

The judgment must be affirmed, with costs.

PUTNAM and HERRICK, JJ., concurred.