## THE MAGDALINE.

(District Court, E. D. New York.   December 3, 1898.)

LIABILITY OF MASTER FOR INJURY TO SERVANT — UNSAFE PLACE TO WORK — CONCURRENT NEGLIGENCE OF FELLOW SERVANTS.

    A servant employed by a ship to do distinct work in the hold, in a place where there was danger of injury from objects falling through openings in the deck above, where others were at work, from which danger he could not protect himself, is not furnished a safe place to work; and the master is liable for an injury so received, though the negligence of co-servants, or of an independent contractor engaged in other work upon the decks, permitted the object to fall which inflicted the injury.

This was a libel in rem by William Duffy against the bark Magdaline to recover for personal injuries received while employed at work on the vessel. .

John A. Anderson, for libelant.

.  Ward, Hayden & Satterlee, for claimant.

THOMAS, District Judge.   The libelant, with other longshoremen, was employed temporarily on the bark Magdaline to assist in shifting ballast.   The captain had requested one Engelke, a person not connected with the vessel, to procure the longshoremen, which the latter did.   For this Engelke received no consideration, beyond the promise of the captain to give him the work of loading the ship, when that should be done, which promise the captain was unable to fulfill.   Engelke personally paid each longshoreman, pursuant to slips of paper, showing his time, furnished to each workman by the captain or mate; and some days after the work was completed Engelke was reimbursed by the agent of the vessel the gross sum thus paid out.   The vessel was undergoing repairs at the pier.   McCaldin Bros. were laying a new main deck under contract, and the Ross Iron Works were doing certain iron work, and payment was made therefor according to the work done on each day.   The vessel had between-decks, which were decked over permanently for about 12 feet in width on each side, leaving an open space, running fore and aft, from the fore to the after hatch amidships, with the exception of certain parts near the three masts, where the deck was laid across the vessel.   No other part of the permanent deck in the between-decks was taken up, unless there may have been, as claimed by the libelant, a smaller opening, approximating 18 inches in width and 2 feet long, in the between-decks, left by the carpenters in relaying the deck.   The libelant claims, and produces evidence tending to show, that on July 25, 1898, after he had been working two or three days, he was wheeling sand in the hold to a point in the forward part of the ship, and that, when he was several feet from the main hatch of the between-decks, and several feet from the middle line of the ship, a piece of wood, about 18 or 20 inches long and 10 inches wide, fell upon his head, and produced the injury which is the subject of this libel.   The libelant claims that the wood fell through

the small opening in the between-decks, and that it was caused so to fall by the act of certain of the crew of the vessel, who were on the between-decks, clearing it of the boards and other matter thereon. Certain of the crew were on the between-decks, to wit, the mate, who at the time of the accident was near the main hatch, the second mate, between the main and after hatch, clearing away the deck planks and piling them up over the wings, and one Kruse, seaman, who was clearing up the old ropes, wires, wood, and cases lying around, about 10 or 12 feet from the large open space above referred to in the between-decks. The respondent claims that the wood fell from the main deck, where workmen were relaying the floor, and asks the court to infer this from the nature of the work existing there, and from the probability that the shavings and other material, which had previously on the same day fallen in the hold, and of which the men therein complained to the persons in the between-decks, came from the main deck. The evidence of the libelant, and his witnesses, Smith, McGunigel, Walsh, and Thornton, all fellow long-shoremen of the libelant, tends to show that the small hole was in the between-decks, and that the piece of wood fell through the same, while the evidence of the crew working on the between-decks is to the effect that such small hole did not exist.

For the purposes of this decision it will be assumed that the plaintiff was employed by the ship, and that the case in this regard is coincident with The Harold, 21 Fed. 428, The Islands, 28 Fed. 478, and The Furnessia, 30 Fed. 878, cited by the claimant; and the following conclusions are justified by the evidence: (1) That the libelant was injured by some wood falling through the small opening in the between-decks, or through the larger opening therein (and for the purposes of this decision it is immaterial through which hole the wood fell); (2) that such wood fell by reason of the negligence of some of the crew on the between-decks, or of the carpenters on the main deck; (3) that the libelant was not furnished by the vessel with a safe place to work. Hence, a case is presented of an injury to a servant by the negligence of the master in not providing a safe place to work, and of a co-servant or an independent contractor in allowing the object to fall that did the injury. It is true that, without the negligence of the co-servant or of the independent contractor, the injury would not have happened, and, if that were the sole cause, the libelant could not recover against the vessel; but the servant's or contractor's negligence would not have been effective, had not the master placed the men at work in the hold, in a situation where they could not guard themselves from objects falling from above, and had not the master left uncovered openings in the deck, through which the wood and material, which was being handled above, and which was likely to fall, did fall upon the men in the hold.

The vessel was undergoing general repairs, and the evidence shows that pieces of wood, dangerous to the men in the hold, had previously fallen, and the work undertaken above was likely to lead to this. In such case, it was the duty of the master, when placing servants in the hold of the vessel, to use due care to guard them against

injury arising from the conditions existing above. A master may not place his servant at a work made dangerous by the nature of the work of other servants, or persons performing work under contract, without due effort to furnish adequate protection, and, when injury arises, escape upon the plea that, but for the negligence of a co-servant or third person employed on the premises, the injury would not have happened. A servant may expect that his master will not surround him with dangerous agencies, or expose him to their operation, whether they are in charge of the master's servants or of any independent contractor. The rule is well illustrated, if the block was dropped by one of the crew, by Ford v. Lyons, 41 Hun, 512, which, in all its facts, is similar to the case at bar. See, also, Stephens v. Knitting Co., 69 Hun, 375, 23 N. Y. Supp. 656, and Daley v. Schaaf, 28 Hun, 314, where, however, an element existed not now present. If the block was dropped by the servants of an independent contractor, the case is illustrated by Burnes v. Railroad Co., 129 Mo. 41, 56, 31 S. W. 347, and Rook v. Concentrating Works, 76 Hun, 54, 27 N. Y. Supp. 623.

It must be considered that this case is quite different from one where the master employs his servant generally in a building undergoing repairs by an independent contractor, and the servant comes in contact with the work which the contractor is doing, and is injured thereby. Such was Conway v. Furst, 57 N. J. Law, 645, 32 Atl. 380. In the case at bar the master had called in some men to do distinct work in the lower hold of the vessel, unconnected with the servants in the between-decks or the contractor's servants on the main deck, against whose acts the persons in the lower hold could not protect themselves, and against which the master had furnished no protection.

Therefore the libelant should recover, but his injuries were, fortunately, quite limited. During the day after the accident he was about, in a state of intoxication, and the surgeon states that his injury was of slight duration. He should be allowed for four weeks' loss of time, or $60, and $50 should compensate him for any discomfort arising from the slight wound received. Let a decree be entered for $110, with costs.