TOLEDO BREWING & MALTING CO., Limited, v. BOSCH.

(Circuit Court of Appeals, Sixth Circuit. May 8, 1900.)

No. 778.

1. MASTER AND SERVANT—ACTION FOR INJURY OF SERVANT.

In an action by a servant against the master to recover for personal injuries, on the ground of the failure of defendant to furnish reasonably safe appliances, where the facts are substantially undisputed, and the conclusion that there was a negligent omission of duty by defendant is one at which all reasonable men must have arrived therefrom, the question of liability becomes one of law, and it is not error for the court to instruct the jury that the right to recover is established, and submit to them only the question of damages.

2. SAME—UNSAFE APPLIANCES—NEGLIGENCE OF INDEPENDENT CONTRACTOR.

A master is not relieved from the positive personal duty which he is under to the servant by letting work to a contractor, and he cannot avoid liability for an injury to the servant due to the dangerous condition of appliances which he is required to use, on the ground that such dangerous condition was caused by the negligent acts of an independent contractor, whom the master had employed to make certain repairs about the premises.

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

This action was brought in the state court of common pleas of Lucas county, Ohio, and removed, on application of plaintiff in error, into the circuit court of the United States for the Western division of the Northern district of Ohio. The object of the suit was to recover damages for a personal injury sustained by defendant in error while in the service of plaintiff in error; his regular work being that of engineer of an ice machine operated by plaintiff in error at its brewery house, in the city of Toledo, Ohio. It was part of his duty to aid occasionally in hoisting barrels of salt from the ground to the second floor of the brewery building, and he was engaged in the discharge of this duty at the time the injury was received. The apparatus or machine used in hoisting the barrels of salt consisted of a large beam projecting over and from the wall of the building at the top about two feet. The wall extended about two feet above the roof of the building, which was flat. One end of the beam rested on the wall, and the other on the roof, so that there was an incline from the outer end towards the roof. The end of the beam upon the roof was held in place by weights placed thereon, one of which was a large door nailed to the beam, on which was placed other articles of weight. An iron hook was attached to the outer end of the beam and on this was hung a pulley. This hook was about 45 feet above the ground. The rope extending over this pulley was secured to a stake driven into the ground, and was adjusted to two other pulleys, and to the other end of the rope at the ground was hitched a horse, so as to operate the hoisting apparatus by horse power. The barrel of salt, caught and held by a pair of hooks attached to one of the pulleys, was carried or elevated to a window on the second floor, at which defendant in error was stationed, to take in or receive the barrel of salt, and place it on the second floor, where the ice machine was operated. This window was directly under the beam, and the top of it about eight feet below the beam. A few days prior to the day of the accident the president and superintendent of the company employed Schillinger Bros., who were engaged in the general roofing business, to make such repairs to the roof of the brewery building as would put it in good condition. One of the Schillingers first examined the roof, and reported to the president that the roof needed "recoating all over." Schillinger Bros. were thereupon directed to do whatever work was necessary on the roof. The contract was verbal, and consisted of nothing beyond the general direction to make such repairs as were found necessary. There was no suggestion or provision in respect to any precaution to be taken by Schillinger Bros. in the prosecution of the work, and no notice or direction was given to the servants

of plaintiff in error engaged at work about the building in relation to the intended repairs on the roof. It became necessary for Schillinger Bros. to have the roof swept and examined, and for that purpose the roofing gang, at work under them, removed the weights from the beam, so that the beam could be shifted from one side to the other, as might be necessary. The weights were removed, and the beam carried to one side, and left in that condition without replacing the weights. In this situation defendant in error, under order of the foreman of plaintiff in error, took his position with another man at the window for the purpose of receiving barrels of salt about to be hoisted. The foreman of the brewery had no knowledge of the removal of the weights, or the condition in which the beam had been left, and there was no indication of that condition, looking at the beam from the ground. The rope was stretched as usual, the hooks attached to a barrel of salt, and the horse started, when the beam upset and fell, the end to which the pulley was attached coming down into the window where defendant in error was stationed, striking him on the head, shoulders, and ankle, breaking his ankle, and causing serious injury.

The right to recover in the court below was grounded on the alleged omission of duty by the master to take reasonable precautions for the safety of the servant, and this right was denied upon the ground that the acts complained of as negligent were those of an independent contractor, for which the defendant, as employer, was not responsible. The court instructed the jury, in substance, that the defendant was under a positive duty to take reasonable care and precautions for the safety of the servant in providing a safe place in which to work, and safe machinery and apparatus with which to do the work, and that it was not relieved of this duty in consequence of the contract with Schillinger Bros., and that its responsibility in that respect was the same, under the given facts in this case, as if the work had been done by the defendant company itself; and, by way of restating the substance of the instructions, the court said: "So I say to you, gentlemen, upon the admitted and conceded facts in this case, that it was the duty of the defendant to maintain this apparatus in a safe condition when it put its servants, including the plaintiff here, at work in using it for the purpose of raising salt barrels; and when, by the direction of one of its general officers (the general manager), the weights that held this beam securely in its place were removed, and the beam displaced, so as to render its operation and use unsafe to those who might be employed about it, it failed in that duty which the law requires,—that care and prudence which should be exercised in the use of its agencies and apparatus, so that harm may not come to those in its employ who use them and put them in operation. And, being guilty of negligence in that respect, it will be responsible—it will be liable in damages—to the plaintiff for the injuries which he has sustained, unless the plaintiff by his own negligence directly contributed to the injuries of which he complains." To the charge of the court in these respects exception was duly taken, and error is assigned. The jury returned a verdict in favor of plaintiff below, assessing his damages at $5,000, upon which judgment was pronounced, and to revise that judgment the case is brought here on writ of error.

Wm. P. Tyler, for plaintiff in error.
Orville S. Brumback and Charles A. Thatcher, for defendant in error.

Before LURTON and DAY, Circuit Judges, and CLARK, District Judge.

CLARK, District Judge, after stating the case as above, delivered the opinion of the court.

It was suggested, rather than pressed in argument, that the question of negligence should have been submitted to the jury, conceding that the court below was right in the view taken of the law applicable to the case. This question of negligence, of course, involved the point whether the displacement of the beam in the work of repairs on the roof was so probable or necessary that it should have been anticipated, and the danger guarded against by the master by

suitable precautions. The facts were substantially undisputed, and the conclusion that there was a negligent omission of duty was one at which all reasonable men must have arrived, provided the master was responsible to the servant for the defect in the hoisting apparatus caused by displacement of the beam. Under these circumstances, the question of liability was one of law, and the court might properly instruct the jury that the right to recover was established, and submit the case to the jury to determine the measure of damages. This was what the court did. Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434; Scholtz v. Insurance Co. (C. C. A.) 100 Fed. 573.

The controlling question, then, is whether, in view of the contract between plaintiff in error and Schillinger Bros., the doctrine in relation to employer and independent contractor is applicable to the facts of the case.

The principle—respondeat superior—upon which the master is held responsible for the unlawful and negligent acts of a servant done in the course of the servant's employment does not, of course, extend to make an employer responsible for the acts of a person not in his service, with whom he has contracted to do the work in the course of which the default occurred. The general rule is well settled, and not controverted, that an employer is not liable for an injury resulting from the negligence of an independent contractor, or his servants, such as negligence in the mode of doing a work in itself lawful. Pol. Torts (5th Eng. Ed.) 75; Casement v. Brown, 148 U. S. 615, 13 Sup. Ct. 672, 37 L. Ed. 582; 1 Shear. & R. Neg. (5th Ed.) § 168. There are a number of established important exceptions to the general rule, but we are not now concerned with these generally. One exception to the general rule of exemption from liability in such cases is where the law imposes on the employer the duty to keep the subject of the work in a safe condition. A municipal corporation, for example, being under a duty imposed by law to keep the streets in a safe condition for passage, is liable for injuries in consequence of an obstruction or dangerous excavation caused in the performance of a work, and left exposed, although the work is done by an independent contractor. Mayor, etc., v. McCary, 84 Ala. 469, 4 South. 630; City of Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298; Hughes v. Percival (1883) 8 App. Cas. 443; Bower v. Peate, 1 Q. B. Div. 321; Water Co. v. Ware, 16 Wall. 566, 21 L. Ed. 485; Curtis v. Kiley, 153 Mass. 123, 26 N. E. 421. See, also, Wood, Mast. & Serv. § 316; 1 Shear. & R. Neg. § 176.

These and other like cases proceed upon the principle that a positive personal duty cannot be delegated to an agent or contractor, and that the obligation in such cases is to do the thing required, and not merely to employ another to do it, and, to bring a case within the rule, it is sufficient if the duty is one to the public or a third person, and imposed by law or by statute. Bridge Co. v. Steinbrook (Ohio Sup.) 55 N. E. 618; Water Co. v. Ware, 16 Wall. 566, 21 L. Ed. 485; Wood, Mast. & Serv. § 616; 1 Shear. & R. Neg. §§ 14, 176.

This subject was much considered and the previous cases reviewed by the English court of appeal in Hardaker v. District Council [1896]

1 Q. B. 335, in which Lindley, L. J., after stating that the city council were not bound in point of law to do the particular work by servants of their own, but were left free to employ contractors to do the work for them, said:

"But the council cannot, by employing a contractor, get rid of their own duty to other people, whatever that duty may be. If the contractor performs their duty for them, it is performed by them through him, and they are not responsible for anything more. They are not responsible for his negligence in other respects, as they would be if he were their servant. Such negligence is sometimes called 'casual' or 'collateral' negligence. If, on the other hand, their contractor fails to do what it is their duty to do or get done, their duty is not performed, and they are responsible accordingly. The ratio decidendi of these cases,' said Smith, L. J., in the same case, 'is that, as the duty was imposed upon the defendant by law, he could not escape liability by delegating the performance of the duty to a contractor; for the obligation was imposed upon the defendant to take the necessary precaution to insure that the duty should be performed.' "

In Bridge Co. v. Steinbrook the supreme court of Ohio declared that:

"The weight of reason and authority is to the effect that, where a party is under a duty to the public or third person to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he cannot, by letting it to a contractor, avoid his liability, in case it is negligently done to the injury of another. * * * The duty need not be imposed by statute, though such is frequently the case. If it be a duty imposed by law, the principle is the same as if required by statute. Cockburn, C. J., in Bower v. Peate, 1 Q. B. Div., at page 328. It arises at law in all cases where more or less danger to others is necessarily incident to the performance of the work let to contract. It is the danger to others incident to the performance of the work let to contract that raises the duty, and which the employer cannot shift from himself to another, so as to avoid liability, should injury result to another from negligence in doing the work."

The opinion in this case is instructive, and refers to the leading cases in this country and in England upon the subject. In Water Co. v. Ware, supra, the liability was based upon an obligation imposed by contract. And this doctrine, in the light of the reasons on which it rests, is equally and cogently applicable to that duty resting on the master to exercise reasonable care and caution to secure the safety of the servant. While the relation between master and servant is contractual, the obligation of the master in respect of the safety of the servant is one implied or imported into the contract by law, and is not an express term or provision of the contract. Accordingly, in Railroad Co. v. Herbert, 116 U. S. 647, 6 Sup. Ct. 593, 29 L. Ed. 758, Mr. Justice Field, speaking for the supreme court of the United States, said:

"It is equally well settled, however that it is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other instruments with which he is to work. His contract implies that in regard to these matters his employer will make adequate provision that no danger shall ensue to him."

And in the subsequent case of Railroad Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 921, 37 L. Ed. 780, Mr. Justice Brewer, speaking for the court, declared and defined this duty in language as follows:

"Again, a master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects."

In Baird v. Reilly, 35 C. C. A. 78, 92 Fed. 884, the circuit court of appeals for the Second circuit, discussing this duty of the master, said:

"He cannot escape responsibility by delegating his duty in this behalf to another, because it is his implied contract with the employé that he will see to it that the working place is reasonably safe, in view of the character of the work to be performed, and this obligation is not satisfied by devolving it upon a subordinate."

In The Magdaline (D. C.) 91 Fed. 798, the facts were that the vessel was undergoing general repairs, and the libelant was a servant employed by the ship to do work in the hold. McCaldin Bros. were engaged in laying a new main deck under contract, and the Ross Iron Works in doing certain ironwork. The servant was at work in the hold in the forward part of the ship when a piece of wood fell upon his head, producing the injury which was the subject of the libel. The libelant's contention was that the wood was caused to fall by the act of certain of the vessel's crew, while the respondent claimed that the wood fell from the main deck, where the floor was being relaid in constructing the new deck. The facts which the court treated as established were: (1) That the libelant was injured by the wood falling between one or two openings in the between-decks, it not being material which; (2) that the wood fell by reason of the negligence of some of the crew, or of the carpenters at work on the main deck; and (3) that the libelant was not furnished with a safe place to work. Judge Thomas, first pointing out that while the vessel was undergoing repairs pieces of wood had previously fallen into the hold, and that the work undertaken was likely to lead to this, said:

"In such cases, it was the duty of the master, when placing servants in the hold of the vessel, to use due care to guard them against injury arising from the conditions existing above. A master may not place his servant at a work made dangerous by the nature of the work of other servants, or persons performing work under contract, without due effort to furnish adequate protection,

and, when injury arises, escape upon the plea that, but for the negligence of a co-servant or third person employed on the premises, the injury would not have happened. A servant may expect that his master will not surround him with dangerous agencies, or expose him to their operation, whether they are in charge of the master's servants or of any independent contractor. The rule is well illustrated, if the block was dropped by one of the crew, by Ford v. Lyons, 41 Hun, 512, which, in all its facts, is similar to the case at bar. See, also, Stephens v. Knitting Co., 69 Hun, 375, 23 N. Y. Supp. 656, and Daley v. Schaaf, 28 Hun, 314, where, however, an element existed not now present. If the block was dropped by the servants of an independent contractor, the case is illustrated by Burnes v. Railroad Co., 129 Mo. 41, 56, 31 S. W. 347, and Rook v. Concentrating Works, 76 Hun, 54, 27 N. Y. Supp. 623."

The doctrine thus announced was fully recognized and declared in the late cases of Trainor v. Railroad Co., 137 Pa. St. 148, 160, 20 Atl. 632, and Burnes v. Railroad Co., 129 Mo. 41, 56, 31 S. W. 350. In the last case cited, the supreme court of Missouri, speaking in relation to the duty of the master, said:

"The duty of keeping its road, track, and yards in a reasonably safe condition is a personal duty which the master owes the servant, and it cannot delegate this duty to any servant, high or low, nor can it avoid liability by letting out a part of its duties as a common carrier to independent contractors. While, for many purposes, this relation of independent contractor will be recognized, it cannot be sustained to shield the master from those positive personal obligations cast upon him by his relation to his servant. Schaub v. Railroad Co., 106 Mo. 74, 16 S. W. 924; Lewis v. Railroad Co., 59 Mo. 495; Siela v. Railroad Co., 82 Mo. 435."

In view of these cases, it must be regarded as established by the weight of authority, supported by reason, that the master is not relieved from the positive personal duty which he is under to the servant by letting work to a contractor, and that he does not avoid liability in case the work is negligently done, and the servant thereby injured in consequence of exposure to a dangerous place or defect against which, in the discharge of the master's duty, he should have been protected. It follows, therefore, that the learned circuit judge rightly ruled the question on which the case turns, and in regard thereto correctly instructed the jury. Judgment affirmed.