O. M. BRITT v. CAROLINA AND NORTHERN RAILROAD COMPANY.

(Filed 3 April, 1907).

1. Railroads—Negligence—Employment—Two Corporations.—In an action for damages through defendant's negligence the plaintiff must show his employment; and if employed by one of two corporations in the hands of the same receiver, and he is injured while engaged in working for the other under the instructions of the receiver, evidence of such employment is sufficient to go to the jury in an action against the corporation for whom he was working when injured.

2. Same—Evidence Conflicting—Jury.—When, in an action for damages arising from alleged negligence of the defendant, it is contended that plaintiff was employed by a different corporation and not in the particular work in which the injury was occasioned, and the evidence is conflicting, the jury should find the facts from the evidence under proper instructions from the Court.

3. Negligence—Defective Appliances—Evidence—Jury.—It is the duty of the employer to furnish reasonably safe appliances to be used by the employee in the discharge of his employment; and evidence that a certain one of two chains for loading logs upon a car was defective, that plaintiff notified defendant's manager thereof and requested other chains usually used in such work, which the manager promised to furnish, and instructed the plaintiff to proceed with the work in which the injury was occasioned, is sufficient to go to the jury upon the question of negligence.

4. Negligence—Fellow-servants—Other Servants' Concurring Negligence—Intervening Acts—Proximate Cause.—Under Revisal, sec. 2646, the defendant railroad corporation cannot escape liability owing to negligent act of fellow-servant, and, if it undertakes to load logs upon its cars when it is the duty of another

corporation to do so, it assumes liability for the negligent acts of the employee of such other corporation, not independent and intervening acts to avoid liability, but which, concurring with other negligent acts proximately causing the injury, focalize into one proximate cause producing the result.

5. **Negligence—Assumption of Risk—Contributory Negligence.**—The employee assumes no risk in the proper use of defective appliances after notifying the employer thereof, who promises to remedy the defect; but he must use them with proper regard to their known condition, and, failing in this, he would be guilty of contributory negligence, which would bar his recovery.

6. **Nonsuit—Appeal—View of Evidence.**—In an appeal from a judgment of nonsuit, the plaintiff's evidence is taken in the view most favorable to his contention, and so construed in all its aspects.

CIVIL ACTION, tried before *Council, J.,* and a jury, at December Term, 1906, of the Superior Court of ROBESON County.

The plaintiff sues the defendant company, in the hands of a receiver, for damages for injuries alleged to have been sustained while in its employment, by reason of defective ways, furnished in discharge of his duty, and negligence of its employees. The defendant was at the time of the injury a corporation operating a railroad between Lumberton, N. C., and Marion, S. C. Prior to the time of the injury defendant's property had, by order of the Circuit Court of the United States, been placed in the hands of W. J. Edwards, receiver, who was, pursuant to said order, operating said railroad. Plaintiff alleged that, at the time of said injuries, he was in the employment of said corporation under the control and direction of said receiver; that among other duties assigned to him he was required to aid in loading the cars of said railroad; that on the day of said injury one of the flat cars of said corporation, attached to an engine and other cars, was upon the track of defendant for the purpose of being loaded with logs, the property of the Southern Saw

Mill Company, for transportation. That the usual and proper manner of loading the car was to place skids, one end resting on the side of such car and the other end on the ground or embankment on the side of the track. That the logs lying on the ground or placed on the embankment were drawn over the skids up to and on the car by means of iron chains, one end of which was put around the log and the other end carried over the car and to the opposite side, when mules, hitched to the chains, pulled the log up on the car. The complaint described the manner in which the logs were usually, and by a safe method, drawn up on the car, the adjustment of the chains, etc., and alleged that the manner in which the chains were adjusted by defendant at the time he sustained the injury was unusual, unsafe and dangerous. That prior to the day of the injury he had frequently notified defendant's superintendent that the manner in which chains were adjusted and the logs drawn up on the car was unsafe and dangerous, and that said superintendent had promised to furnish proper chains for said purpose. That on the day of the injury plaintiff was in the discharge of his duty, aiding in loading the car, when, by reason of the defective and dangerous method of adjusting the chains, and the sudden and unannounced movement of the mules, under the direction of the driver, the log fell from the skid and injured plaintiff. That the driver of the mules was an employee of defendant, being one of a loading crew furnished for that purpose. Plaintiff further alleged that "the immediate and proximate cause of his injury was the failure of the defendant to provide a safe appliance and double chains with which to do said work, although demanded of defendant, and its failure in the conduct of the work to observe ordinary care and prudence in starting the train of mules, without notice or warning, to pulling at the log, which fell upon

plaintiff,",. etc.   Plaintiff set forth for a second cause of
action substantially the same allegations, except that he
averred that the driver of the mules and himself were in the
joint employment of the sawmill and the defendant, and that
if the defendant had furnished a double chain with which
to have done the work he would not have been injured, not-
withstanding the sudden driving of the mules, etc.

The defendant denied all of the material allegations of the
several causes of action set forth in the complaint.   Appro-
priate issues were submitted to the jury.   At the conclusion
of the testimony his Honor, upon defendant's motion, di-
rected judgment of nonsuit.   Plaintiff excepted and ap-
pealed.

*McIntyre & Lawrence, E. M. Britt, R. E. Lee* and *Iredell
Meares* for plaintiff.
*McLean, McLean & McCormick* for defendant.

CONNOR, J.   The plaintiff's appeal calls into question his
Honor's opinion that there was no evidence fit to be submit-
ted to the jury upon which a finding could be predicated in
his favor.   The first proposition which plaintiff must make
good is that at the time of the injury he was in the employ-
ment of the defendant.   If he has failed in producing evi-
dence proper to go to the jury tending to sustain this position
he must fail in his action.   In this regard the testimony,
which for this turn we must take to be true, is that both the
defendant railroad company and the Southern Saw Mill
Lumber Company, a corporation engaged in cutting, saw-
ing and shipping logs, were in the hands of W. J. Edwards,
as receiver; that the lumber company shipped its logs over
the defendant road, loading them on cars in substantially
the manner described.   That one McNeely was in the em-
ployment of the receiver or superintendent of defendant rail-

road company. Plaintiff testified: "In February, 1904, I was working on a log train of the defendant company; was conductor of a log train; had been about three months.. I was assigned or put in charge of this train as conductor by Mr. McNeely, who was at that time the general superintendent of the defendant company. Mr. McNeely told me to take the log train and run it to the best advantage of the railroad and the mill; to see that logs were loaded and unloaded; to collect passenger fares and to see that no one rode on the train except the train crew unless they paid fare. Directions were given by Mr. McNeely as to the movement and operation of the train, etc. He also gave me time-tables of schedules and told me to be careful to avoid collision with other trains, etc. * * * The local conductor and engineer were under my control. The movement of trains was directed by me. * * * Mr. Edwards told me that he expected me to help load the logs on the cars and that, however well he liked me, if I did not do this he would get some one in my place who would do this work. This conversation or instruction from Mr. Edwards occured while I was operating the train and put in charge of it as conductor." The plaintiff, upon cross-examination, said: "I went to Kingsdale in May, 1899, accepted employment with the Southern Saw Mills. Mr. King was in charge. Remained there, under several superintendents, until Mr. Edwards took charge as receiver in Spring of 1903. Did practically the same work under all the superintendents. After Mr. Edwards took charge, until November, 1903, my work was regularly in the woods examining timber. Can't tell who paid me for my services. Went to the office and got my pay, but do not know who paid it—who furnished it. Think my name was on the pay-roll of the mills to the time of injury. Won't swear that my name was

ever on the pay-roll of defendant company. The wages were paid me at office of the mill; this was after Edwards was appointed receiver. Was hurt in the afternoon, after dinner. The logging force had been there from early morning. Did not go down with train in the morning—don't know what conductor did. There was much other testimony from plaintiff upon the question of employment, some of which tended to sustain and some to contradict his contention. It is manifest that some confusion in regard to his relation to the two corporations grows out of the fact that Mr. Edwards was receiver of both and operating both. It does not appear what, if any, relation they bore to each other. The plaintiff says that Mr. Edwards told him that the reason why he wished him to serve the defendant company in the manner testified to was "to save expense."

While the payment of or promise to pay wages, in consideration of services rendered, establishes the relation of employer and employee, other considerations may be sufficient, as, if A employs B to serve himself and another, the fact that A pays the entire wages will not necessarily prevent the other from being, in respect to the service rendered, the employer or master of B. The theory of the plaintiff is that Edwards, being the receiver of both corporations, employed or retained him in the service of the lumber mill, with the agreement between Edwards and himself that in addition to his services to the mill he should, when so directed by the receiver, serve the defendant company. That pursuant to this agreement he rendered the service as described by him, and was under contract obligation to help load the car. Mr. Edwards, as receiver of both corporations, had the power to make such a contract, and it was prudent for him to do so "to save expense." The adjustment of the wages between the two corporations, for which he was receiver, may

well have been left to him. It did not concern plaintiff if he was willing to render the service to both corporations, as he says he did. In *Rouke v. White Moss Coll. Co.,* L. R., 2 C. P. Div. (1877), 205, *Cockburn, C. J.,* says: "Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as the servant of the man to whom he is lent, although he remains the general servant of the person who lent him." The principle is well stated by *Miller, C. J.,* in *Vary v. B. C., etc., Railroad,* 42 Iowa, 246: "A person may be the general servant of one and the special servant of another; that is, he may perform special services for one while he is the general servant of another, and while performing such special service he will be the servant of the one for whom such services are performed, as to that particular service." It is true that there both companies paid the plaintiff. It is not suggested, however, this fact was, by any means, controlling in fixing the relation of the parties. It is clear that Edwards, receiver of the mills, would have had no right to require the plaintiff, by reason of his contract to serve the mills, to serve the defendant as conductor, etc., without his (plaintiff's) consent. When plaintiff consented to do so, he became, by virtue of that contract, *quoad* that service, the servant of the defendant company. He did not thereby become the joint servant of the two companies, but rather contracted with Edwards, receiver of the defendant company, that he would serve defendant as conductor, etc. In the case cited, the Court says that if the contract was for joint service the servant has his election to sue either. The theory of the defendant is that the mills, for the purpose of loading its logs on defendant's car, furnished the "loading crew" and appliances, and that plaintiff, as the employee of the mills, was present, aiding in the work. That defendant

took no part in loading the car, leaving it entirely to the
mills.  If this be the correct interpretation of the testimony,
the plaintiff must fail in his action.  The testimony of the
plaintiff is not so clear that the Court may say, as a matter
of law, what is the truth of the controversy.  It is a question
for the jury under proper instructions by the Court.  Cer-
tainly more than one inference may be drawn from the evi-
dence.  As we interpret the complaint, there is no allegation
of a joint service.  The plaintiff rests his case upon the
theory that, *quoad* the service rendered, he was the employee
of defendant company.  Assuming, for the purpose of fur-
ther considering the appeal, that plaintiff's allegation that
he was the employee of defendant is sustained, we proceed
to inquire whether there was any evidence fit to be submitted
to the jury, tending to show a breach of duty on the part of
defendant.  That it is the duty of an employer to furnish
to the employee reasonably safe ways and appliances with
which he is employed is too well settled to require or justify
the citation of authority, and is conceded by the learned
counsel for defendant.  There is evidence tending to show
that the chain furnished for loading the car was not safe
and not such as was in general use by railroads for that pur-
pose and that plaintiff had notified defendant's superin-
tendent thereof, and that he had promised to furnish him
other chains.  Plaintiff testified: "Mr. Edwards told me
that Mr. McNeely would give me instructions, and if any-
thing was needed, Mr. McNeely would get it for me.  This
was while I was working on the train sometime in the latter
part of 1903.  This was the last of the two conversations I
had with Mr. Edwards.  After I began service of this train I
found that we needed more chains to load logs, also wrap-
ping chains.  I asked him to furnish them, and he agreed to
do so.  Some time after this I went to see him and inquired

if the chains had come, and he told me he had not ordered them, but would order; for me to get two links of the side chain wanted, bring to his office and he would get chains. I did this, and he said he would have chains in a very short time; for me to work on until chains came. I told him what I wanted with chain and how I wanted to make my loading chain." Here witness explained model and illustrated how he was hurt. The model was used in the argument before us, illustrating the manner in which logs were loaded on flat cars and the alleged defect in the adjustment of the chain. Plaintiff also testified that he knew what kind of chains are in general use by railroads for loading logs. He explained to the jury the manner in which the work was done. We think that the testimony, in this aspect of the case, entitled the plaintiff to have the issue, upon the question of defective or unsafe ways, etc., submitted to the jury. The defendant insists, however, that assuming this to be true, the plaintiff is not entitled to recover because, upon his own testimony, such defective ways, etc., was not the proximate cause of his injury. That the negligent driving of the mules while one end of the log was off the skid was the cause of the injury. It appears that the mules had stopped and, under the method used in controlling their movement, the driver should have waited for the signal from a man who stood on the flat car. The plaintiff was standing on the ground by the side of the skid for the purpose of watching and, if necessary, keeping the logs straight on the skids. In this aspect of the case plaintiff testified: "I don't remember hearing the driver tell the team to start up, but think he did, and started up team unbeknowing to me. That is what snatched the log off. If the team had stood still until I straightened the log, why then it would have went on all right without any damage. The log falling off was due to a single chain. It would not have

gone on the car until it was straightened. After the log was in the shape it was, after putting one end ahead of the other, the team was stopped, and I was making the attempt to straighten the log; if the driver hadn't started the team, I could have straightened the log all right, and it would have no doubt gone on the car after it had been properly straightened on the skids; that is what I was there for."

In reply to a question of the Court, after explaining the situation of the log, the plaintiff said: "That the driver starting unexpectedly was the cause of the accident." Defendant insists that, upon this testimony, the proximate cause of the injury was the action of the driver in starting the mules without warning, thereby throwing the log upon plaintiff. Conceding that plaintiff was in defendant's employment and that the chains furnished him for loading were not such as were in general use, and that, at the moment preceding the injury the log, by reason of the defect in the chain, was not straight on the skids, and that plaintiff, in the discharge of his duty, was in the act of straightening it so that it would have gone on the car in safety, it insists that an independent cause intervened and produced the result—that is, moved the log, throwing it from the skids and causing it to fall upon the plaintiff. This contention presents an interesting question in the solution of which other phases of the testimony must be noted. The plaintiff, to meet this contention, says that the driver was also in the employment of the defendant company and that, being a fellow-servant, the defendant is responsible for his negligence. We do not discover any evidence tending to show that the driver was in the service of defendant, otherwise than as the employee of the mill.

The case, then, comes to this: The defendant, owing to the public the duty of receiving and transporting freight,

places a car upon its track at a place and in a position to receive logs from the lumber mills for shipment; the defendant furnishes the chains and directs the plaintiff, its employee, to aid in loading the car; the lumber mills furnish the mules and driver to perform the duty assigned to them in the work. The duty is imposed upon the defendant to receive the logs for shipment, and this, we think, includes the duty of loading them upon the car. So far as it affected its employees, it was its duty to provide reasonably safe ways and appliances, and to adopt safe methods for doing the work. If, instead of loading the cars the defendant permitted the shipper to do so, it assumed a responsibility to its employees that the shipper would likewise use safe ways, etc. We had occasion to consider this question in *Wallace v. Railroad,* 141 N. C., 646 (p. 661), where we said: "If the defendant permits its shipper to load its car, it is as much and in the same degree liable for an injury sustained by its servant by negligence on the part of the shipper as if its own servant had loaded it." The case, in this respect, may be likened to those in which a railroad corporation has leased its property, wherein it is uniformly held that the corporation is liable for injuries sustained by the negligent operation of the property by the lessee. *Smith, C. J.,* in *Aycock v. Railroad,* 89 N. C., 321, says: "The defendant company, leasing the use of its road or permitting the use of it by another company, remains liable for the consequences of the mismanagement of the train in charge of the servants of the latter, and the injury thence resulting, to the same extent as if such mismanagement was the act or neglect of its own servant, operating its own train." This principle has been enforced in numerous cases by this Court. *Logan v. Railroad,* 116 N. C., 940; *Phelps v. Steamboat Co.,* 131 N. C., 12. A number of cases illustrating the principle are

collected in the notes to 2 Labbatt Master and Serv., 1618. "If a person employs another to perform a duty which he would have to discharge if another were not employed to do it for him, such employee, as to that service, stands in the master's stead with relation to other persons." *Moore v. Wabash and St. Louis Railroad,* 85 Mo., 588; *Northern Pacific Railroad v. Peterson,* 162 U. S., 346. The doctrine is thus stated by *Justice Field* in *Railroad Co. v. Herbert,* 116 U. S., 647: "It is well settled that it is the duty of the employer to select and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery or other means by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant, so as to exempt himself from liability for injuries caused to another servant by its omission. Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skillful co-laborers, or from defective machinery or other instruments with which he is to work. His contract implies that, in regard to these matters, his employer will make adequate provision that no danger shall ensue to him." Again it is said: "A servant may expect that his master will not surround him with dangerous agencies, or expose him to their operation, whether they are in charge of the master's servants or of an independent contractor." *Toledo B. & M. Co. v. Bosch,* 101 Fed., 530; *Pullman Palace Car Co. v. Laack,* 18 L. R. A., 215.

The conclusion to which all of the authorities supported by reason brings us is this: The defendant owed to the lumber mills the duty of receiving at such convenient place as

it might designate, the logs and loading them upon its car
for shipment. It owed to the plaintiff, when directed in the
course of his employment to aid in the loading, the duty to
furnish safe ways, appliances and careful co-employees. If
this duty to load the car was delegated to another and the
plaintiff directed to aid in the work, the defendant remained
liable for the negligence of such other person in the same
manner as if it had sent its own servants to do the work. So
far as the duty of the defendant to the plaintiff is concerned,
in respect to furnishing safe ways, appliances and co-em-
ployees to aid in the work, the lumber mills and its employees
were the servants of the defendant. *Allison v. Railroad Co.,*
64 N. C., 382. The plaintiff and the driver of the mules
were therefore engaged in a common employment in load-
ing the car. This results not from any contract relation
between the driver and the defendant, but from the relation
of employer and employee between the lumber mills and the
driver, and the undertaking by the mills, either by permis-
sion or pursuant to contract with the defendant, to load the
cars. This being so, the negligence of the driver is imputed
to the defendant in so far as it brought injury to the plain-
tiff. We do not deem it very material to inquire whether
the lumber mills was, in loading the car, an independent con-
tractor or was the employee of the defendant or acting simply
by its permission. The result of its negligence, so far as the
plaintiff is concerned, is the same. In no aspect of the case
can the defendant escape liability upon the doctrine of the
non-liability for the negligence of a fellow-servant. Revisal,
sec. 2646. We are thus brought to an examination of the
contention of the defendant that the proximate cause of the
plaintiff's injury was not the defective ways (chain) but the
negligence of the driver in starting the mules. The prin-
ciple invoked by defendant is recognized and uniformly en-

forced.  It is well stated in *Harton v. Telephone Co.*, 141
N. C., 455.  When the original negligence is insulated from
the injury by the intervention of some independent, efficient
agency, such agency will be deemed the proximate cause of
the injury.   The difficulty confronting the defendant con-
sists in the necessity that the intervening agent be independ-
ent—that is, not related to the defendants or its negligence;
whereas here, as we have seen, the negligence of the driver
is imputed to the defendant—is its negligence.   The essen-
tial element of independence is not only absent, but the neg-
ligence of the driver combined with the first negligence of
defendant, and by such combination focalized the two negli-
gent acts and became the efficient cause of the plaintiff's
injury.   One breach of duty resulted in placing the log in a
dangerous position, and, while the plaintiff was endeavoring
in the discharge of his duty to straighten the log upon the
skids, another negligent act of defendant threw it upon him.
The case does not come within the principle invoked by de-
fendant.   The act of the driver causing the mules to start
was not that of an independent agent.   We are of the opinion
that the case is otherwise distinguished from *Harton's case,
supra,* in that the negligence of the defendant resulting in
placing the log in a dangerous position had not expended its
force; it was at the moment a menace to the plaintiff, and the
act of the driver was not the intervening efficient cause of the
injury—it was concurrent with the first cause.   The two
causes concurred, combining or focalizing into one proximate
cause producing the result.   It is not necessary to discuss this
phase of the case.   Defendant insists that plaintiff is barred
of a recovery because he continued to use the chain with
knowledge of its unfitness for the service.   It is well settled
that where the servant notifies the employer of the defective
condition of the appliance, and he promises to remedy such

defect, the servant, relying upon such promise, may remain in the service, using such appliance without assuming the risk of injury in its proper use. The defect imposes upon the servant the duty to exercise due care in the use of the appliance having regard to its defective condition. As has been frequently said by us, while the servant does not in such cases assume the risk, if he is guilty of contributory negligence in the use of the appliance, he cannot recover. *Pressly v. Yarn Mills,* 138 N. C., 410, where the authorities are collected and commented upon. This defense is open to defendant as modified by the decisions in *Greenlee v. Railroad,* 122 N. C., 977, and *Troxler v. Railroad,* 124 N. C., 189. As the motion for judgment of nonsuit was based upon the plaintiff's evidence, the judgment, granting the motion, does not indicate upon what aspect of the testimony his Honor was of the opinion that plaintiff was not entitled to maintain in his action. This condition of the record, together with the range of the arguments, makes it necessary to consider the testimony in all of the aspects of the case. We have, as the motion to nonsuit necessitates, treated the testimony as true and given the plaintiff the benefit of that view of it most favorable to his contention. It is proper to say that there is to be found in his testimony grounds for other inferences favorable to defendant's contention; these were not open to us in reviewing the judgment of nonsuit. We are of the opinion that, for the reasons stated, the testimony as it bore upon the several issues raised by the pleadings should have been submitted to the jury under proper instructions by the Court. To that end there must be a

New Trial.